PHILIP CASE, Appellant, v. ELBRIDGE G. PHELPS, MARY D. PHELPS, his wife, and WILLARD PHELPS, Respondents.

A person about to engage in a new business may not, with a view thereto, and for the purpose of securing his property for the benefit of himself and his family, in the event of losses occurring in such new business, convey such property to his wife, voluntarily, without consideration.

Such a conveyance is fraudulent and void as to subsequent creditors.

It must be so declared, notwithstanding it be distinctly found, that the con veyance was made without any intent to defraud creditors *then existing.*

APPEAL from an order of the Supreme Court in General Term, in the sixth district, reversing a judgment entered upon the report of a referee, and ordering a new trial. .

The action was brought, on the 4th of October, 1860, by the plaintiff, a creditor of the defendant Elbridge G. Phelps, by judgment recovered on the 14th of June, 1860, for moneys paid as his surety upon notes dated in March and April, 1855, and given by Phelps for money then borrowed. The object of the action is to set aside certain two conveyances claimed by the plaintiff to be fraudulent and void as to creditors of Phelps, — one executed by Elbridge G. Phelps, and Mary D., his wife, to Willard Phelps, dated December 18, 1854, recorded March 14, 1860, conveying a piece of land with a hotel thereon, in the village of Ithaca; the other executed by the said Willard Phelps, to the said Mary D. Phelps, of the same date, and recorded June 11, 1855, conveying the same premises.

The answer of the defendants denied all fraud; denied that, at the date of the conveyances, Phelps was indebted; averred that the premises were conveyed to the said Mary, through the said Willard, in good faith, subject to certain two mortgages thereon, without any intent to defraud creditors or other persons, for the *bona fide* purpose of giving up the premises and the management of the public house to the said Mary, that she might, in conducting the business, discharge the incumbrances, and support herself and family, the said Elbridge proposing to travel abroad and engage in

the business of a public exhibition; that the said Elbridge has since that time been principally abroad, and the said Mary has managed the said public house in her own name, and therein, by her care and attention, has supported herself and children, and paid off one, and a portion of the other, mortgage; that the plaintiff had no claim against the said Elbridge, when the conveyances were made, and cannot question them; that the delay in recording the deeds was caused by mere inattention, and not by any fraudulent design or purpose, and the plaintiff was in nowise defrauded or misled thereby into signing the notes; that the said Mary is the sole owner of the premises, and they are not subject to any lien in favor of the plaintiff.

The referee reported in favor of the plaintiff, and found as facts:

The signing of the notes by the plaintiff as security for the defendant Elbridge, their payment by him, and judgment therefor, and execution returned unsatisfied; the ownership of the premises by such defendant, in 1849, and the occupation thereof as a hotel, by such defendant and his wife, with no apparent change of ownership, down to the commencement of this action, except the recording of the deed from Willard Phelps, June 11, 1855.

That the deeds in question were executed in the city of New York, on the dates above mentioned, and were recorded as already stated; each of them expressing a consideration of $4,800.

That the conveyances were voluntary, and without any real consideration, but without any actual intent to defraud the creditors of said Elbridge G. Phelps, then existing.

That he then owed about $700, and that said conveyances were made with a view of said Phelps engaging in a traveling Indian show, and to secure said property for the benefit of himself and family, against any losses that might occur in said show; and that said Phelps, in said show business, did sustain heavy losses, and became entirely insolvent.

That the property was then worth $5,500, and was incumbered by two mortgages, amounting to from $3,200 to

$3,500, which (excepting about $250) has been paid from the proceeds of the said hotel, such proceeds being produced by the joint labors of the said Elbridge, and Mary, his wife, in carrying on the business thereof. That, in 1861 (pending this suit), the said Mary leased the hotel to James Davison, for one year, at a rent of $700.

His conclusions of law are, that the plaintiff is to be deemed a creditor, as of the time of signing the notes as security.

That the deeds are fraudulent and void as against the plaintiff.

That the said Mary is entitled to no subrogation to a priority of the plaintiff, by reason of the payments made on the mortgages.

And he ordered judgment for the plaintiff, for the payment of his judgment, out of the property; for the appointment of a receiver to collect the rents, and apply them in satisfaction of the plaintiff's judgment, with leave, if the rents shall not satisfy the judgment and costs, to apply to the court for an order to sell the premises for that purpose.

Judgment being entered, in conformity with the direction of the referee, the defendants appealed; and the Supreme Court reversed the judgment, and ordered a new trial, in November, 1862, in the following terms: "Judgment reversed, and new trial granted; costs to abide the event."

The opinion of the Supreme Court, pronounced by Mr. Justice MASON, places the reversal on the sole ground, that the finding of the referee, that the conveyances to the defendant Mary D. were voluntary and without consideration, was against the evidence; but the order of reversal does not so state.

The plaintiff stipulated, and appealed to this court. .

*Ferris & Dowe*, for the appellant.

*Samuel Love*, for the respondents.

WOODRUFF, J.    In view of the clear and explicit language of sections 268 and 272 of the Code of Procedure, and the

repeated decisions of this court, in conformity with their requirement, many of which have been reported, it seems hardly necessary to say, that this appeal brings to us, for consideration, questions of law only, and we must therein assume, that the facts are correctly found, and upon sufficient evidence. It is not stated, in the judgment of reversal, that the judgment below was reversed on questions of fact. (*Crocker* v. *Crocker*, 31 N. Y. 507; *State of Michigan* v. *Phenix Bank*, 33 id. 10; *Peterson* v. *Rawson*, 34 id. 370; *Marco* v. *L. & L. Ins. Co.*, 35 id. 664; and several cases in which the point is incidentally mentioned, not yet reported.)

We have no discretion; and, therefore, although the reason for reversing the judgment, assigned in the opinion of the Supreme Court, that the finding of the referee, that the deeds in question in this cause were voluntary and without consideration, is against the evidence, we are not at liberty to affirm the decision on that ground, however fully we might concur therein, if at liberty to examine the evidence upon that question.

If this want of jurisdiction enables the plaintiff to avoid the effect of a proper order for a new trial, an order to which the defendants were justly entitled, and the avoidance of which may work injustice to them, it is not due to any defect in the law, but to the unfortunate omission to insert in the judgment of reversal (as the Code in such case permits) the ground of the judgment appealed from.

Our statute (2 R. S. 137) declares, that a conveyance shall not be declared fraudulent and void, solely on the ground that it was not founded upon a valuable consideration.

The same statute declares, that the question of fraudulent intent shall, in all cases, be a question of fact.

The referee has, in this case, found, distinctly and affirmatively, that the conveyances in question, although without consideration, were made without any intent to defraud the creditors of the judgment debtor then existing.

Under such a finding of fact, it would be difficult for a court of review, having jurisdiction to consider questions of

law only, to say that the conveyances in question were not, as to such existing creditors, perfectly fair and valid.

And, if the referee had made a like finding in regard to contemplated future indebtedness and creditors in whose favor it might arise, then, however it might be competent for the Supreme Court to reverse it as against evidence, we, in reviewing a judgment of reversal, which was not placed upon the question of fact, would still be compelled to say, that the finding is conclusive, and the conveyances valid, unless the other facts found showed a case of fraud in fact, which made the finding not only inconsistent, but erroneous in law.

The referee here has not, *in terms*, declared, that, as a question of *fact*, he finds any fraud whatever; it does not appear by his findings, that, at the time of the conveyances, Phelps was not a man of wealth, and that, having respect only to his *then condition* and business, such provision for his wife and family (if provision for them was the sole object) would not be in all respects reasonable, fair and proper, leaving still in his hands an abundance, wherewith to pay all the debts which he owed, or contemplated as possible. Such a state of things, though not affirmatively found, might be presumed in support of what he did find, viz., that, although he owed seven hundred dollars, these conveyances were not made with intent to defraud his then existing creditors, and if not, then, as a question of law, the conveyances are valid as to them.

How then stand the conveyances as to subequent creditors?

That a conveyance made for the purpose of hindering, delaying and defrauding future creditors is within the statute and void, cannot be questioned.

Such a conveyance, though the grantor be wholly free from debt at the time, is within the terms and intent of the statute.

If the finding of the referee amounts to a finding to that effect, it is not vital to its support that it should be expressed in the terms of the statute.

He has been careful in this case to confine his exoneration of Phelps from fraudulent intent to his purpose in regard

to existing creditors. As to subsequent creditors, he finds in other language what his actual purpose was.

Without reciting the report at length, the facts found by the referee may be condensed into the following statement:

On the 18th December, 1854, Elbridge G. Phelps, being the owner of land, and a hotel thereon of the value of $5,500, but mortgaged for $3,500, and being indebted otherwise to the amount of $700, voluntarily, without any consideration, conveyed the same, mediately, to his wife, without any intent to defraud his then existing creditors, but with a view to engaging in a new business, and to secure the property for the benefit of himself and family, in the event of losses occurring therein. · The deed, by which he parts with the title, is not placed upon record, and he and his family continue to occupy the property without any change in the possession or apparent ownership. He thereupon borrowed money; the plaintiff, without knowledge of such conveyances, and believing him still to own the premises, became surety for the repayment. He engaged in such new business, and therein sustained losses, and became insolvent.

The question thereupon arising, is this: Is the conclusion of the referee (declared by him to be a conclusion of law, from the foregoing facts), that such conveyance to the wife is fraudulent and void as against the plaintiff, erroneous?

In other words, may a person about to engage in business which he believes may involve losses, with a view to entering upon such business, convey his property to his wife, voluntarily, without consideration, to secure it for the benefit of himself and family, in the event that such losses should occur?

I cannot regard this question, as in substance, other than the inquiry, may a man, for the purpose of preventing his future creditors from collecting their demands out of his property then owned, and *for the purpose* of casting upon them the hazards of his success in the business in which he is about to engage, convey his property without consideration to his wife, in order to secure the benefit of it to himself and family, however disastrous such business may prove, and

continue in the possession, not even putting the deeds upon record, until after such subsequent indebtedness arises?

This, it will be seen, is not merely a question, whether a man may provide for his wife and family, and thereby protect them against the hazards of a business in which he is about to engage, but whether he may put aside property for the benefit of himself for such a purpose. For it is immaterial, that, if the property once became the lawful property of his wife, it would not, under our present laws, be subject to his control. The legal efficacy of the arrangement, which he makes to secure to himself the benefit of the property which he puts aside, is not the test of the validity of the transaction as against his creditors; the inquiry is, whether the conveyance (whether the plan and scheme be unskillfully or skillfully devised) was made to defraud creditors.

It seems to me, that the question above put can receive but one answer. The facts found constitute fraud, fraud in *fact,* in whatever terms it is expressed.

They, in substance, are a finding, that, with intent to defraud creditors whom he expected to owe, and whom possible losses might render him unable to pay, he made the conveyance for the purpose of securing the property to himself and family, remaining in the possession of the property, and in the apparent ownership. This is fraud in fact; and none the less because the referee did not give it that designation in terms. (*Stilman* v. *Ashdown,* 2 Atk. 481; 2 Story's Eq. Jur. § 356, and note; *Taylor* v. *Jones,* 2 Atk. 601; *Parish* v. *Murphee,* 13 How. [U. S.] 99; *Black* v. *Nease,* 37 Penn. 438; *Savage* v. *Murphy,* 8 Bosw. 97, and cases cited; *Carpenter* v. *Roe,* 10 N. Y. 227.)

Upon the ground that the finding of the referee amounts to a finding that the conveyances were made for the purpose of defrauding creditors, I think the order appealed from must be reversed, and the judgment entered on the report of the referee must be affirmed with costs.

Ordered accordingly.