STEPHEN HART. The (UNITED STATES v.). See Case No. 16,385.

## Case No. 13,365.

### In re STEPHENS.

[3 Biss. 187;[1] 6 N. B. R. 533.]

District Court, W. D. Wisconsin. Feb., 1872.

SURRENDER OF PREFERENCE — WHEN MUST BE MADE — CHATTEL MORTGAGE — WHEN FRAUDULENT — TRANSFER IN PAYMENT — WHAT DEBTS RETIRING PARTNER MAY PROVE.

1. A full surrender by a creditor of a preference fraudulent under the act restores him to all his rights, and he may prove his claim against the estate.

[Cited in Re Leland, Case No. 8,230; In re Hatje, Id. 6,215.]

2. Whether this may be done after suit is brought, is a matter of discretion with the court. It will not be allowed after a recovery.

3. There is no distinction in this respect between voluntary and involuntary bankruptcy.

4. A chattel mortgage taken by a retiring partner on all the firm goods, including property to be afterwards acquired, and by agreement kept from the records, is fraudulent and void as to subsequent creditors of the continuing partner.

5. A transfer of the property to the retiring partner in payment of his mortgage can be set aside by the assignee, and the mortgagee will not, in such case, be allowed to prove his debt.

6. For such partnership debts, however, as he may have paid or assumed, he will be allowed to prove, he having as partner a right to contribution.

This was a motion on behalf of the assignee in bankruptcy to expunge certain debts proven by Satterlee Warden against the bankrupt's estate, on the ground: First, that he had received a preference by way of payment from the bankrupt which he had not wholly surrendered; second, that the debts were void as arising out of a transaction between the parties entered into to defraud the creditors of the bankrupt. For about five years prior to March 31, 1870, E. R. Stephens and Satterlee Warden were co-partners in mercantile business at Darlington, in this district. On that day the firm dissolved, owing Warden for capital in the business $15,000, and third parties $11,000. They had assets of the value of $19,750, $6,000 of which was real estate, and the balance consisted of the stock of merchandise, notes and accounts. Stephens had no capital in the business, and his individual

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

property, besides his homestead, did not exceed $600. Stephens and Warden settled on that day, Stephens buying Warden's interest in the firm property, except the real estate, giving his notes for $7,000, secured by a chattel mortgage on the stock then on hand and thereafter to be acquired. He also agreed to pay the $11,000 of firm debts, and Warden took the real estate of the firm at $6,000. By agreement between them the chattel mortgage was not filed until March 30, 1871. Stephens continued the business alone until March 21, 1871, when he transferred his stock of merchandise and notes and accounts, valued at $12,000, to Warden, in payment of the $7,000 due him, Warden at the same time agreeing to pay the firm debts, which were then about $5,000. On petition afterwards by his creditors Stephens was adjudicated a bankrupt. The assignee filed a petition against Warden to compel him to surrender the property thus taken by him, as being a preference under the act. On the hearing Warden asked to have proceedings stayed that he might surrender the property, which was granted by the court; and Warden thereupon surrendered the property to the assignee, and then filed claims against the bankrupt's estate for the $7,000, for which he had Stephens' notes and mortgage, and for the $5,000 of firm debts, which Warden had agreed to pay. After March 31, 1871, Stephens contracted other debts in his business to the amount of $7,000, which were still unpaid.

P. A. Orton, Jr., for assignee.
H. S. Orton, for Warden.

HOPKINS, District Judge. At the conclusion of the argument I announced that I regarded the transfer of the property by the bankrupt to Mr. Warden, on the 20th of March, 1871, in payment of these claims, as clearly creating a preference within the meaning of the bankrupt law, and a plain violation of its provisions. I further stated that I thought the testimony showed that he had surrendered all the property he had received of the bankrupt upon said debts before filing the proof of his claims, although he did not do so until after the testimony had been taken on proceedings to recover it.

But upon the question as to the effect of the surrender at that time, as well as several other matters discussed, I took the case under consideration, and after a careful examination of the whole case, I have come to the conclusion that Mr. Warden, by the surrender of the property that he took in payment of these claims of the bankrupt, relieved himself from the penalty prescribed in the 39th section of the act [of 1867 (14 Stat. 536)].

I fail to see any reason for a distinction between sections 35 and 39 in that respect. The attempt to maintain a distinction between voluntary and involuntary proceedings fails to commend itself to my judgment.

A full surrender of a fraudulent preference by a creditor is a complete condonation of that offense, as I understand the provisions of section 23. That section is not limited in its operation to cases of voluntary proceedings.

The preference is what the law denounces, the intent of the act being to secure an equal distribution of the estate of a bankrupt among all his creditors; and if a creditor voluntarily yields a preference he may have acquired or attempted to acquire, and surrenders all the property, so that it does not in any manner interrupt the equal distribution required by the act, the party is restored to his rights as they stood before the preference. If a creditor, having received preference, refuses to surrender, and a suit is prosecuted against him by the assignee for the property or money unlawfully received as a preference, and a recovery is had against him, he cannot then surrender and receive the benefits of that section. He is then by section 39 forbidden the privilege of proving his debt or receiving any dividend; and it may be a matter of discretion with the court whether a party should be allowed to surrender after suit brought, and particularly after the testimony is taken, and the defendant becomes satisfied that it is enough to defeat him.

I do not think the spirit of the act would warrant a practice of that kind. A party should not be allowed to experiment and speculate upon the ability of the assignee to prove a case against him, and when he sees he has succeeded then to plead guilty and surrender, and take the benefit of section 23. Such a practice ought not to be tolerated, and hereafter, except under very peculiar circumstances, I shall not allow a party guilty of a fraudulent preference to surrender after suit brought and prove his debt under section 23; and if, on examination, I should conclude I had the power to prevent it, I shall expect a party to elect, and after having elected, shall hold him to his election. But in this case, he did surrender, and I think he is, therefore, relieved from the penalty imposed by the bankrupt act. In re Scott [Case No. 12,518]; Tonkin v. Trewartha [Id. 14,094]; In re Kipp [Id. 7,836]; In re Montgomery [Id. 9,728]; In re Davidson [Id. 3,599]. So, if the case of the assignee rested wholly upon the bankrupt act, the motion would be denied.

But a question of far more importance and difficulty is presented, that is, whether the transaction between Warden and the bankrupt on the 30th of March, 1870, was not intended to defraud the subsequent creditors of Stephens, and hence void at common law. It is claimed if I should so find, that that fraud is not condoned, but inheres in the transaction, and renders void all the prom-

ises Stephens made with Warden upon such transaction, and that no court should lend its aid to enforce them or either of them; that the case will then fall within the principle of the maxim, "Ex turpi causa, non oritur actio." Nellis v. Clark, 20 Wend. 24, and cases cited.

In order to rightly understand my conclusions on this point, it will be necessary to briefly state some of the facts established by the evidence. Stephens and Warden were partners in the mercantile business, at Darlington, commencing sometime in 1865. Warden was the man of means; Stephens the active man, although both gave some personal attention to the business. The business was not successful, and before March, 1870, Stephens had withdrawn, and used up all his capital, and the company was owing Warden $15,000, and their other liabilities were a little over $10,000. On the 31st of March, 1870, an inventory was completed, which showed that the firm nominally had assets equal to the debts, or nearly so, but they were not equal in actual value to the firm liabilities by several thousand dollars. Stephens had very little except his homestead, The firm was then insolvent, although Mr. Warden was perfectly good, and able to pay all the liabilities. On that day they dissolved, and Warden transferred his interest in the firm assets to Stephens, except the real estate, which Warden took at $6,000, and applied towards the amount the firm owed him; Stephens agreed to pay all the firm debts to third parties, and gave his note for $7,000 to Warden, that being the balance due him, which he secured by chattel mortgage upon the goods then in the store, and upon all such as he might afterwards acquire, until the payment of that debt. It was agreed, however, that the chattel mortgage was not to be filed, for the alleged reason that if it was it would prevent Stephens buying any more goods on credit.

It must have been known to Mr. Warden that Mr. Stephens was insolvent, and that he could not, out of the stock, pay the indebtedness assumed by him; and the case fails to disclose any ground for a belief upon the part of Warden of the ability of Stephens to go on long with the business. It had been unsuccessful with the credit his name had given to it, and in the light of the testimony no court could find that Mr. Warden believed Stephens would be able to continue long, and the taking of the chattel mortgage to secure the debts to him shows that he meant to keep a control of the stock and goods, so that he could at any time secure himself by taking possession. In view of these facts, I am forced to the conclusion that it was a scheme on the part of Warden and Stephens to clothe Stephens with the apparent ownership of the property, and send him out to obtain goods on credit from parties ignorant of the condition of his affairs and of the security to Warden, and thus enable him to obtain the means with which to pay the balance due to Warden, which in any other way he would be unable to do. Warden must have known such would be the probable result of Stephens' undertaking, and when he consented to keep his mortgage off the record he must be held to have done so with a view of enabling Stephens to obtain credit that he ought not to have, and to obtain property that he could not pay for, and which, according to the terms of this mortgage, was incumbered by it as soon as placed in the store.

I must, upon these facts, hold that the design of these parties was to defraud the subsequent creditors of Stephens, and therefore that the notes and chattel mortgage given to Warden were absolutely void as to the subsequent creditors of Stephens, and that the proof of debt filed therefor must be stricken out. This I find was a fraud upon the subsequent creditors, and this case should be treated as if they were the parties contesting it. The assignee is, in reality, acting in their interest.

The parties entered into this arrangement for the real purpose of casting upon the subsequent creditors the hazards of Stephens' success in continuing the business. All the property he could get, they supposed, was covered by this mortgage to Warden, so that Warden would be secured anyway.

Suppose the subsequent creditors, instead of proceeding in bankruptcy, had proceeded by attachment and taken this property, and Warden had commenced his action to recover it back upon his mortgage, can it be possible, upon the facts as proven in this court, that a court or jury would hesitate a moment in finding that this scheme was devised to defraud Stephens' subsequent creditors? The facts constitute fraud—fraud in fact. Case v. Phelps [39 N. Y. 164]; Stilman v. Ashdown, 2 Atk. 481; Reade v. Livingston, 3 Johns. Ch. 481; Parrish v. Murphree, 13 How. [54 U. S.] 99.

[In the latter case, McLean, J., in delivering the opinion of the court, says, "The statute designed to prohibit frauds by protecting the rights of creditors. If the facts and circumstances show a fraudulent intent, the conveyance is void against all creditors past and future."] [2]

The taking of the mortgage which expressly covers the goods Stephens might afterwards acquire, as well as those he then had, and keeping it from the records for the express purpose of enabling him to acquire more upon credit, in view of his pecuniary situation and the known hazardous nature of the business he was engaged in, are sufficient to warrant and authorize any court to find that Mr. Warden was acting in bad faith toward the parties who might, in ignorance of his claim, sell Stephens goods on credit, and I know of no principle of law or

[2] [From 6 N. B. R. 533.]

equity that would allow him to hold such property as against the creditors thus deceived, or to share with them in its distribution.

The subsequent conduct of the parties is in harmony with this construction. When the crisis came we find Warden taking all the property and accounts to pay his debts and the balance of the firm debts, without making any provisions for subsequent creditors. It was insisted by the counsel for the assignee that the claims proven by Warden as company debts, should be excluded on the same ground, as the contract of dissolution embraced them as well as the payment of his individual debts; but I think they are distinguishable. Mr. Warden's right to prove them does not rest wholly on the agreement made by Stephens at that time; if it did, I think they would be void on the same grounds. But he had no claim until he had paid the debts, and when he paid them he had the right to claim contribution of Stephens, independent of the agreement and the right to prove them and have them allowed to the extent of his right to contribution; and as between the parties in the case, he would be entitled to the whole sum paid, as he had largely overpaid his portion, and the company, and Mr. Stephens as one of the members, were owing him a much larger amount than these claims. He stands on his rights as partner to be reimbursed for his advancements, and can recover independent of the agreement, and if the agreement was void it cannot be said to merge his original claim, nor be set up, if void, by Stephens or those representing him as a defense to such original claim. Meshke v. Van Doren, 16 Wis. 320, 325; Ferrall v. Shaen, 1 Saund. 295; The Queen v. Sewel, 7 Mod. 119; Vilas v. Jones, 1 Comst. [1 N. Y.] 276; Johnson v. Johnson, 11 Mass. 359. Again, there was no contract made to defraud existing creditors; the fraudulent part of the agreement related to the effort of Warden to get his pay at the expense of future creditors, and only that part which was fraudulent should be held void.

[The debt of Doty & Judge, supposed to be one thousand dollars, should be excluded, as the proof is defective in not stating the amount paid therefor by Warden. But as it is probable under the rule above adopted, Mr. Warden may withdraw that proof and perfect it according to the facts. The claim proven at three hundred and four dollars and twenty-five cents, contains items that have accrued since the filing of petition, and for insurance which is not provable. From the testimony I cannot find that there is due but the charge for cash twenty-two dollars, loaned to Stephens to go to Kansas. I do not see that a claim against Stephens is established for the balance of these items; and that claim is disallowed except as to the twenty-two dollars loaned to Stephens to go to Kansas. All the other claims are allowed as proven, except the seven thousand dollar claim upon Stephens' notes to Warden hereinbefore mentioned.] [2]

Warden's claim for the $5,000 of firm debts which he had assumed will be allowed, but not the $7,000 claim upon Stephens' notes to him.

A suggestion was made by me upon the argument, in relation to a mortgage given by Stephens to Warden to secure certain notes indorsed by Warden, to the effect that a release of that portion of the property not embraced in the homestead set-off, might entitle Mr. Warden to prove those claims. On further reflection I am inclined to think that, in order to be allowed to prove these claims, he should discharge the mortgage absolutely. In re Stevens [Case No. 13,392]. I think, in order to be allowed to prove a debt unlawfully preferred, the party must wholly surrender the unlawful preference—wipe out the security entirely.

NOTE. That a creditor who has accepted a chattel mortgage with a view to obtain a preference, not only loses the lien of his mortgage, but will not be allowed to prove his debt. Bingham v. Richmond [Case No. 1,415]. That preferred creditor may surrender and then prove debt. In re Richter's Estate [Id. 11,803]. May be after suit brought, but must be before judgment. Hood v. Karper [Id. 6,664]. Contra, Phelps v. Stearns [Id. 11,080]. Same in involuntary as in voluntary bankruptcy. In re Scott [Id. 12,518]. Contra, In re Princeton [Id. 11,433]; In re Coleman [Id. 2,979]; In re Walton [Id. 17,130].