## BENONI PARTRIDGE *vs.* ROBERT STOKES and others.

In an action in the nature of a creditor's bill, to enforce a judgment against the property of the debtor's wife, on the ground that such property was held by her in fraud of his creditors, the husband testified that he gave his wife some $500, during a certain period, but was uncertain as to the amount. The wife testified that she never had any money given her during that period, except about $500 from her husband. During the war, there was deposited to her credit, in a savings bank, upwards of $3,100, and it appeared that the husband received about that amount. *Held* that the burthen of proving exactly how much was received by the wife was thrown upon the defendants. And that in the absence of such proof, the presumption legitimately arose that she received at least the $500.

A conveyance executed with intent to defraud creditors is void not only as to existing, but as to future, creditors.

Although parties are illiterate, they cannot be relieved, altogether, from the duty of showing, with reasonable certainty, the precise nature and extent of their dealings, when such dealings are the subject of investigation.

APPEAL, by the plaintiff, from a judgment entered · upon the report of a referee.

The action is in the nature of a creditor's bill, to enforce a judgment for $168.50, damages and costs, recovered by the plaintiff against Robert Stokes, in this court, on the 24th September, 1868, against the property of Jane Stokes the wife of said judgment debtor, after execution returned wholly unsatisfied.

*Irving G. Vann*, for the appellant, cited 2 *R. S.* 135, § 1; *Id.* 139, 142, 143; *Reade* v. *Livingston*, (3 *John. Ch.* 481, 497, *and cases therein cited;*) *Lord, Townshend* v.

*Windham,* (2 *Vesey,* 1;) *Taylor* v. *Jones,* (2 *Atk.* 600;) *King,* &c., v. *Wilcox,* &c., (11 *Paige,* 589;) 1 *Story's Eq.* 352, § 361; 1 *Dana's Rep.* 533; 2 *Pick.* 411; *Palm. Rep.* 415; 4 *Day's Rep.* 284;) *Mason* v. *Rugers,* (1 *Root's Rep.* 324;) *Carpenter* v. *Roe,* (10 *N. Y.* 227;) *Seward* v. *Jackson,* (8 *Cowen,* 406;) *Jackson* v. *Post,* (15 *Wend.* 588;) *Babcock* v. *Eckler,* (24 *N. Y.* 623;) *Dygert* v. *Remerschnider,* (32 *id.* 629;) *Case* v. *Phelps,* &c., (39 *id.* 164;) *Bakeman* v. *Rose,* (18 *Wend.* 151;) *The Fulton Bank* v. *Benedict,* (1 *Hall's Rep.* 558;) *Thompson* v. *Menck,* (22 *How.* 431, 435;) *Strittmacher* v. *Salina,* &c., *Plank Road Co.,* (34 *How.* 74;) *Mason* v. *Lord,* (40 *N. Y.* 477;) *Lefler* v. *Field,* (50 *Barb.* 407;) *Scranton* v. *Baxter,* (4 *Sand.* 5;) *Burhans* v. *Van Zandt,* (7 *Barb.* 91.) ,

*By the Court,* MULLIN, P. J. I do not propose to examine any of the evidence in the case, except what related to an amount of money which Stokes made during the rebellion, in procuring volunteers for the army.

Stokes admits that he received, during the last two years of the war, between $2,000 and $3,000, in the business of obtaining volunteers, and of this, some $500 was given by him to his wife and was used by her in her business, or in erecting houses on lands owned by her in the city of Syracuse. He says: "I think I might have given her $500 of it, perhaps a little more or a little less; it may have been a good deal more or a little less. She may have paid it towards the houses she owns."

The wife testifies, "I never had any other money given me except about $500 at the time of the war, when he (her husband) was putting in substitutes * * * my husband may have given me more than $500; he never kept any accounts."

Stokes also says he kept no account of what he gave

his wife ; may have given her over $500 ; cannot tell the amount he let her have.

The treasurer of the Syracuse Savings Institution testified that on the 11th of February, 1864, there was deposited to Mrs. Stokes' credit $1,700, and on the 24th of March $1,400. There were deposited after that, sums varying from $100 to $800. The last entry was the 11th of June, 1869.

It does not follow that the $1,700 and $1,400 above mentioned came from Stokes ; but when the parties who received and paid the money, and who were in moderate circumstances, are wholly unable to specify the amount received by the wife, and it appears that Stokes received about the amount so deposited, it throws upon the defendants the burthen of proving how much was received by the wife, or the presumption legitimately arises that she received at least the $500.

When Mrs. Stokes received the money, her husband was indebted to divers persons in small sums, but not to the plaintiff. The statute declares the gift to the wife fraudulent as against those creditors.

The fraudulent intent was proved by several witnesses, one of whom, only, was impeached or contradicted.

It is well settled that when a conveyance is executed with intent to defraud creditors, it is void, not only as to existing, but as to future, creditors. (*King* v. *Wilcox*, 11 *Paige*, 589. 1 *Story's Eq.*, § 361. *Case* v. *Phelps*, 39 *N. Y.* 164.)

The referee was wrong in holding the dealings between husband and wife not fraudulent unless the money was paid to her by way of loan and it has been since repaid by her. A loan is not pretended. It was a gift, pure and simple. Although it was a gift, a redelivery of the money to the husband would probably relieve her from the imputation of fraud under which she would otherwise rest, and for which fraud she would be liable to her husband's creditors.

Partridge *v.* Stokes.

But there is no evidence that any such thing was done, or intended to be done. Both say she has paid in fines, &c., for him as much as she received, but they have kept no account of what was thus paid, if the payment could be applied as a return of the gift.

It will not do to. allow such loose and unsatisfactory evidence to cover up the dealings between parties engaged in defrauding of either or both.

It cannot be said with any degree of certainty that the wife was actually paid back $100.

Although these parties are illiterate they cannot be relieved, altogether, from the duty of showing, with reasonable certainty, the precise extent and nature of their dealings, when such dealings are the subject of investigation.

It would not be tolerated, when a debtor intending to defraud his creditors sells his property to another, that payment of the purchase money could be proved by such evidence as was given in this case. For the purchaser to say I paid the price, but I cannot tell when or how, nor in what sums, would not be received as evidence which would justify a court or jury to find the fact of payment.

On another trial more reliable evidence may be given that will relieve the defence from the suspicion that is cast upon it by the testimony of the defendants.

The judgment is reversed, and a new trial ordered, with costs to abide the event, and order of reference vacated.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]