DAVID CARR et al., Respondents, *v.* ELLEN BREESE et al., Appellants.

A husband is authorized to make a suitable provision for his wife, and if made without any fraudulent intent or purpose, it will be sustained.

Where, therefore, a husband, who is entirely solvent, openly purchases property and causes the same to be conveyed to his wife, retaining sufficient property in his own hands for the purposes of his business and abundant means to pay all his existing debts, and the circumstances show that neither insolvency nor inability to meet his obligations could reasonably have been within his contemplation and that no new or more hazardous business was in contemplation, the transaction cannot be held fraudulent and void as against subsequent creditors.

Where a husband having property worth from $21,000 to $22,000, and owing debts to the amount of $2,800, and doing a prosperous business, purchased and caused to be conveyed to his wife premises costing $16,-

300, of which sum, $10,600 was paid by him by mortgage on his real estate, and the balance secured by a mortgage on the premises, *held*, that the settlement was not unsuitable or disproportionate to the husband's means.

Also *held*, that the fact that one who had given the husband credit previous to such settlement, knowing that he owned the real estate so mortgaged to pay part of the purchase-money, was not informed when subsequent credit was given, of the purchase for the wife, was not evidence of fraudulent intent.

*Carr* v. *Breese* (18 Hun, 134), reversed.

*Savage* v. *Murphy* (34 N. Y. 508), *Case* v. *Phelps* (39 N. Y. 164), *Carpenter* v. *Roe* (10 N. Y. 227), *Shand* v. *Hanley* (71 N. Y. 319), *Mullen* v. *Wilson* (44 Penn. 413), distinguished.

(Argued June 7, 1880 ; decided September 21, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 18 Hun, 134.)

This action was brought by plaintiffs as judgment creditors of defendant William H. Breese, after return of execution unsatisfied, to reach certain real estate, the title to which was in defendant, Ellen Breese, wife of said William H., on the ground that the same was purchased and paid for by her husband, and conveyed to her in fraud of the rights of his creditors. The finding of the referee and the facts so far as material are sufficiently stated in the opinion.

*R. A. Parmenter* for appellants. The transfer to his wife by Mr. Breese was not fraudulent as to subsequent creditors, and would only be presumed to be fraudulent as against those who were creditors at the time. (1 R. S. [Edm. ed.] 677, §§ 51, 52; *Kennedy* v. *McGuire*, 22 N. Y. Sup. Ct. 70; *Tappan* v. *Butler*, 7 Bosw. 491; *Dunlop* v. *Hawkins*, 59 N. Y. 342; *Ocean National Bank* v. *Hodges*, 16 N. Y. Sup. Ct. 61; *Bodine* v. *Edwards*, 10 Paige, 504; *Jenks* v. *Alexander*, 11 id. 623; *Hind's Lessees* v. *Longworth*, 11 Wheat. 199.) Plaintiffs to sustain this action must prove an actual intent by Mr. Breese to cheat and defraud subsequent creditors. (*Van Wyck*

v. *Seward,* 6 Paige, 62 ; 5 Cow. 67 ; 8 id. 406 ; 1 Edw. Ch. 227 ; 18 Wend. 375 ; *Wilbur* v. *Fradenburg,* 52 Barb. 474 ; *Babcock* v. *Eckler,* 24 N. Y. 623 ; *Dygert* v. *Remerschneider,* 32 id. 636 ; *Child* v. *Connors,* 48 How. 414 ; *Curtis* v. *Fox,* 47 N. Y. 299 ; *Phillips* v. *Wooster,* 36 id. 412 ; *Loverchyle* v. *Hatfield,* 4 Abb. [N. S.] 210 ; Willard's Eq. Jur. 233 ; *Holmes* v. *Clark,* 48 Barb. 237 ; 7 Bosw. and 59 N. Y.) The provision made for the wife by her husband was not, under the circumstances, an unreasonable one. (*Babcock* v. *Eckler;* 24 N. Y. 623 ; *Hind's Lessees* v. *Longworth,* 11 Wheat. 199.)

*Esek Cowen* for respondents. The plaintiffs are in the situation of antecedent creditors as to the conveyance to Mrs. Breese. (*Savage* v. *Murphy,* 34 N. Y. 508 ; *Mills* v. *Morris,* Hoff. Ch. 419.) Treating the plaintiffs as creditors of Breese, who became such subsequent to the conveyance to his wife, the conveyance was fraudulent and void as against them. (3 R. S. [6th ed.] 145, § 4 ; *Case* v. *Phelps,* 39 N. Y. 164, 169 ; *Mullen* v. *Wilson,* 44 Penn. 413 ; *Smith* v. *Vodges,* 2 Otto, 183 ; *Carpenter* v. *Roe,* 10 N. Y. 227 ; *Shand* v. *Hanley,* 71 id. 319–322 ; *Savage* v. *Murphy,* 34 id. 508 ; *Mills* v. *Morris,* Hoff. Ch. 419 ; *Partridge* v. *Stokes,* 66 Barb. 586 ; *Dunlop* v. *Hawkins,* 59 N. Y. 342.) It is of no consequence whether Mrs. Breese participated in the fraudulent design of her husband or not. (*Jackson* v. *Mather,* 6 Cow. 301 ; *Mohawk Bank* v. *Atwater,* 2 Paige, 54 ; *Reade* v. *Livingston,* 3 Johns. Ch. 481 ; *Cortes* v. *Garlach,* 44 Penn. 43.)

MILLER, J. The finding of the referee, to the effect that the defendant William H. Breese procured the title of the real estate which is the subject of this action, with the intent to procure goods on credit, and for the purpose of securing the property for the benefit of himself and family in event of losses in business, and to prevent his creditors from collecting their demands out of said property, and that therefore the transaction was fraudulent and void, is not, we think, sufficiently sustained by the evidence. From a careful perusal of the evidence, it is quite obvious that the husband had no inten-

tion fraudulently to save his property by placing it in the name of his wife, at the expense of his creditors, in case of misfortune. While his object was, in the days of his prosperity, to make provision for his wife, as he had a perfect right to do, within well-settled rules, we cannot resist the conclusion that he had no fraudulent or unlawful intention in contemplation. The husband is authorized to make a settlement of a suitable amount upon his wife from his property, if he has no dishonest purpose in view ; and such settlement the law will protect.

At the time when the title of the property was conveyed to the wife, the husband was in prosperous circumstances, and was financially unembarrassed. He owned valuable real estate, which sold for $17,200, and was possessed of personal property of not a very productive character, which was worth between $4,000 and $5,000 more. He purchased the property in question for the sum of $16,300, and procured the deed to be executed in the name of his wife, and he paid to the extent of $10,600, from moneys which he first obtained by mortgaging his other real estate and a subsequent sale of the same, leaving the balance on mortgage upon the property conveyed. He at that time owed not to exceed $2,788.18. He used the balance of the moneys realized from real estate sold by him, in stock and fixtures for a new saloon he had hired in his business, and in the purchase of some lots in Lansingburgh. He afterward paid in full every debt which he had contracted before the title of the property was vested in his wife. The purchase of the house and lot was made openly and without any concealment, the deed thereof immediately placed on record, and there was no prospect or probability of financial disaster. Nor is it manifest that his subsequent embarrassment and final insolvency were contemplated or expected when the conveyance was made to his wife. For three years he continued prosperous, in good credit and standing financially, in the pursuit of the same business in which he had previously been engaged, and without having incurred any extraordinary or unusual risks. He engaged in no speculation except the purchase of the Lansingburgh lots, in which he disposed of some personal property

which was unproductive, at a large price; and these lots, upon a forced sale upon execution, brought nearly within one-fifth of the purchase-price. Reverses came unexpectedly, while in the pursuit of his ordinary business, without any intention on his part to defraud his creditors, and it may be said, that without any fault on his part except a want of human foresight, he became embarrassed and insolvent. It is not apparent that Breese had in view, at the time of the execution of the deed to his wife, any such result, or that he in any way contributed to produce the result which followed, for the purpose of defrauding his creditors and enjoying the advantages to be derived from the provision made for his wife. Under such circumstances, the presumption of any fraudulent intent is rebutted, and it is manifest that he had done no more than any business man has a right to do, to provide against future misfortune when he is abundantly able to do so.

The debt of the plaintiffs, which is sought to be enforced in this action, was incurred more than three years after the conveyance had been made to the wife and placed on record, and hence the plaintiffs do not stand in the same position as if they were antecedent creditors as of that time. Nor can it be said, in view of the evidence presented, that there was a fraudulent design by Breese to continue to obtain credit by his apparent responsibility, after the legal title had been transferred, placing the property beyond the reach of his creditors. Although a voluntary conveyance of this character is, presumed to be fraudulent, as against creditors, at the time, of the person paying the consideration money, where the fraudulent intent is not disproved (1 R. S. [Edm. ed.] 677, §§ 51, 52), the proof of the circumstances of his business, its risks and contingencies, his obligations and resources and means of meeting them, and that he neither was insolvent nor contemplated insolvency, and that an inability to meet his obligations could not reasonably have been within his contemplation, is sufficient to rebut the presumption of fraud arising from the fact that the conveyance was without a valuable consideration. (*Dunlap* v. *Hawkins*, 59 N. Y. 342; *Jencks* v. *Alexander*, 11 Paige, 623.)

The decisions which are relied upon to sustain the position that the conveyance to the wife was fraudulent and void as to subsequent creditors are, we think, distinguishable from the case at bar, and do not go to the extent which is claimed by the respondent's counsel, as will be seen by a reference to the cases. In *Savage* v. *Murphy* (34 N. Y. 508), it appears that the grantor was largely indebted when the conveyances of the real estate and the assignment of the lease was made to the wife and children of the defendant, which evidently constituted all his property, for credit obtained in his business; that he made purchases three days previously for a comparatively large sum, and failed in less than one year. There was quite sufficient to show a fraudulent intent, and the case is not analogous to the one at bar. In *Case* v. *Phelps* (39 N. Y. 164), the grantor conveyed to his wife certain real estate, through the medium of a third person, in 1854. Phelps was about to engage in a new and hazardous business, and he made the conveyance evidently to provide against disaster. The deed to the third person was not put on record, but kept secret until 1860, and the deed from the third person to the wife was recorded some six months after the conveyance. The transfer was evidently made in reference to the risks to be incurred in the new business in which the grantor was about to engage, and to protect the property against losses which might be incurred thereby. The decision is placed upon the ground that the act was done for the very purpose of preventing future creditors from collecting demands, and of casting upon them the hazard of such business. In the case at bar, although the business of Breese was extended, there was no such intention, and he continued in the same beaten track, in pursuit of the same object, without adding in any way to the ordinary risks of the same. He entered upon no new field of enterprise for himself, or risks for his creditors, and there was no suppression of the conveyance to his wife, or attempt at concealment. There was in fact an absence of all proof of an intent to defraud or a design to impose upon his creditors. It is also an important fact that in the case last cited, Phelps had parted with all his property, while in the case at bar, he had

reserved a considerable portion of it, which was afterward used in his business. In *Carpenter* v. *Roe* (10 N. Y. 227), the debt had been incurred at the time of the conveyance, the grantor was largely in debt, and fifty days subsequently hopelessly insolvent. At the time of the conveyance, it was not denied that to pay his indebtedness all his property would be required. It will be seen that the facts were entirely different from those presented in the case at bar, where the grantor was indebted to a very trifling amount, and had abundant means left to pay his debts and to conduct the business in which he was then engaged. In *Shand* v. *Hanley* (71 N. Y. 319), it appears there was testimony which tended to show that the debtor bought goods of the plaintiff with the preconceived purpose not to pay for them; that the transfer of the real estate was made with the purpose of screening it from the debt thus created, and the deed was a part of the same plan, and all the parties were conspiring to carry out the same fraudulent purpose. A clear case of fraud was thus made out, which bears no analogy to the case at bar. In *Mullen* v. *Wilson* (44 Penn. 413), it was held that a conveyance from the husband to the wife, to secure the real estate to her free from debts which he might contract in a new business in which he was about to engage, was void and of no effect as against subsequent creditors; a principle which is beyond dispute, and which is not involved in the case now considered, as the evidence does not establish any such state of facts.

A review of the cases cited evinces that none of them have any application to the case presented, where there is no evidence whatever to show a fraudulent purpose, and a considerable amount of property, amply sufficient to meet present debts and future liabilities incurred in the prosecution of the business in which Breese was engaged, was retained for that purpose.

There was no insolvency in fact or in contemplation, no new enterprise started which involved unusual or extraordinary hazard, but the continuance of the business of the grantor for the period of three years, and no dishonest failure, or attempt in any form to defraud. An existing indebtedness alone does not render a voluntary conveyance absolutely fraudulent and

void as against creditors, unless there is an intent to defraud.
( *Van Wyck* v. *Seward*, 6 Paige, 62.) This is especially the case
when it is shown that the residue of the property was amply
sufficient to pay all debts. (*Jackson* v. *Post*, 15 Wend. 588;
*Phillips* v. *Wooster*, 36 N. Y. 412; *Bank of U. S.* v. *Housman*, 6 Paige, 526; *Dunlap* v. *Hawkins, supra.*) In the case
last cited, the conveyance for the benefit of the wife was upheld; and ALLEN, J., who delivered the opinion of the court,
refers to some of the leading features which characterize this
case, and says: " By proving the pecuniary circumstances of
the grantor, or him who pays for and procures a grant from
others, his business and its risks and contingencies, his liabilities
and obligations, absolute and contingent, and his resources and
means of meeting and solving his obligations, and showing that
he was neither insolvent nor contemplating insolvency, and
that an inability to meet his obligations was not and could not
reasonably be supposed to have been in the mind of the party,
is the only way in which the presumption of fraud, arising
from the fact that the conveyance is without a valuable consideration, can be repelled and overcome, except as the party
making or procuring the grant may, if alive, testify to the absence of all intent to hinder, delay or defraud creditors."

The counsel for the plaintiffs insists that the settlement upon
Breese's wife was unsuitable and disproportionate to his means;
and the referee found substantially in accordance with this view.
According to the findings of the referee, he retained about one-
half in value of his entire property, which was not unreasonable or utterly disproportionate to his means. (See *Babcock* v.
*Eckler*, 24 N. Y. 623, where the disproportion was far greater
and the conveyance was upheld. See, also, *Carpenter* v. *Roe*,
*supra*, where Judge GARDINER, citing from 11 Wheat. 199,
says: " If it can be shown that the grantor was in prosperous
circumstances and unembarrassed, and that the gift was a reasonable provision, according to his state and condition in life,
and leaving enough for the payment of the debts of the grantor,
the presumptive evidence of fraud would be met and repelled.")
Tested by this rule the conveyance, although voluntary, was

not fraudulent, and the circumstances presented repelled every presumption of fraud.

The fact that the deed was promptly recorded after its execution ordinarily would be regarded as sufficient notice to creditors to put them on inquiry as to the ownership of the property, and the fact that the plaintiffs knew that Breese had the title to the other real estate, which he held when they gave him credit previously, and were not informed of the purchase of the new house in the name of his wife, does not change the general rule, where there is no evidence of a fraudulent intent. As there was no such proof, the defendant was not required, I think, to give notice to the plaintiffs of the provision he had made for the benefit of his wife. It is, therefore, unnecessary to consider the question whether notice was actually given.

In view of the facts, we are of the opinion that Mr. Breese had a right to make a provision for his wife, and the conveyance should be sustained, although it was voluntary and without consideration, within well-settled rules.

It was also erroneous to allow the witness Blanchard to state that from the conversation which he had with Mr. Breese, he understood that the Fifth street property was bought and owned by Mr. Breese.

The judgment should be reversed and new trial granted, with costs to abide the event.

All concur.

Judgment reversed.