HUGH F. McLACHLIN and CLAUDE McLACHLIN, Respondents, *v.* JAMES E. BRETT and Others, Appellants.

*Purchase of property from a factor — what facts will charge the purchaser with notice of the rights of the true owner.*

The defendants agreed to purchase a certain amount of lumber from the firm of Hall & Co., at Montreal, and the same was delivered to the defendants at Hunter's Point, L. I., at various times between October nineteenth and the early part of November. The lumber belonged to the plaintiffs, and was sold by Hall & Co., as their agents, on commission, but this fact was, at the time of the sale, unknown to the defendants. Hall & Co. failed on September thirtieth. Before any of the lumber was received, an attachment, issued in an action against Hall & Co., was served upon the defendants, and they informed one of the firm of Hall & Co. of that fact, whereupon he said they would ship the lumber as agents. On October eleventh Hall & Co. wrote to the defendants, referring to the attachment, stating that the lumber was sold on commission and that to save annoyance they shipped as agents. In all the bills, except the first, the lumber was stated to have been shipped by them as agents.

*Held,* that these facts were sufficient to put the defendants upon inquiry as to the ownership of the lumber, and that they could not claim to set off a debt due to them from Hall & Co. against the plaintiffs' claim for the purchase-price thereof.

Appeal from a judgment in favor of the plaintiffs, entered upon the verdict of a jury, and from an order denying a motion for a new

trial made upon the minutes of the justice before whom the action was tried.

*Joseph W. Howe*, for the appellants.

*A. J. Vanderpoel* and *Edward C. James*, for the respondents.

Daniels, J.:

The action was commenced by John H. McLachlin and Edward McLachlin, who were engaged in business as partners at Arnprior, in Canada, for the recovery of the sum of $4,881.49, being the balance claimed to be owing to them from the defendants upon the sale and delivery of 900,000 feet of lumber. The purchase-price amounted to the sum of $9,881.49, and upon that they had received the sum of $5,000. During the pendency of the suit each of the partners departed this life and the present plaintiffs acquired their interests and the action was revived, and has since been prosecuted in their names. The lumber was shown to have been owned by the original plaintiffs, as partners, but it was neither sold nor delivered by themselves to the defendants. That was done through the agency of a firm engaged in business in Montreal under the name of Hall & Co. This firm failed on the 30th of September, 1875. At the time of their failure they were largely indebted to the defendants upon business transactions which had previously taken place between them.

The contract for the purchase of the lumber was made by the defendants with an agent of the firm of Hall & Co., to the extent of 600,000 feet, and the residue was ordered directly from Hall & Co. by the defendants. It was laden on boats at Brockville, on the St. Lawrence river, where it had been received by railway from the original plaintiffs, who were its owners. These boats proceeded to Montreal, where the bills of lading were changed by Hall & Co., the consignees named in them; and other bills of lading taken consigning the lumber to the defendants. Under these bills of lading it proceeded to its final destination, and was afterwards delivered to the defendants at Hunter's Point on Long Island. The first arrival was on the 19th of October, 1875. The others followed during the latter part of the month and the early days of November. But the defendants declined to pay the balance in controversy for the alleged reason that they had purchased the lumber from Hall & Co.,.

who were largely indebted to them upon preceding similar trans-actions, and by way of defense in the action relied upon their indebtedness as a set-off or counter-claim against the demand made for payment of the balance of the price of the lumber. And whether this defense was maintained by the evidence is the controlling point required to be considered upon the appeals.

The lumber was sold by Hall & Co., in their own name to the defendants, and they relied upon that circumstance, and their alleged ignorance of the fact that Hall & Co. were not its owners, to sustain their defense. If the proof maintained these facts the defense would appear to be complete, for, as a general legal proposition, it seems to be settled that if a " factor should sell in his own name as owner and not disclose his principal and act ostensibly as the real and sole owner, the principal may, nevertheless, afterwards bring his action upon the contract against the purchaser. But the latter, if he *bonâ fide* dealt with the factor as owner, will be entitled to set off any claim he may have against the factor in answer to the demand of the principal." (2 Kent Com. [11th ed.], 841 [632*]; *Hogan* v. *Shorb*, 24 Wend., 458; *Wright* v. *Cabot*, 89 N. Y., 571; *Miller* v. *Lea*, 35 Md., 396; *Bliss* v. *Bliss*, 7 Bosw., 339; *Henry* v. *Marvin*, 3 E. D. Smith, 71; *Huntington* v. *Knox*, 7 Cush., 371.) But before any of the lumber had been received by the defendants an attachment had been issued and served upon them in an action brought against Hall & Co. This is stated by one of the defendants to have preceded the eleventh day of October, and within a day or two after the service was made, he stated that they told Louis A. Hall, of the firm of Hall & Co., that " this attachment had been served on us, and then he says that hereafter they would ship the lumber as agents to prevent it being attached here, and prevent any trouble." And, on the eleventh day of October, they are also shown to have written this letter to the defendants :

MONTREAL, *October* 11, 1875.

Messrs. BRETT, SON & Co., *New York :*

DEAR SIRS.—Inclosed please find B. L. and invoices of lumber, per boat G. S. Clark. We understand that parties are attaching in New York lumber shipped by us; also any funds due us. As this lumber is sold by us on commission, of course, it will do those attaching no good.

To save annoyance we have made inclosed papers shipped by us as agents.

Yours truly, HALL & CO.,

POPE.

Which was in all probability received by them before the first load of lumber arrived at their wharf. In the bills of lading succeeding the one accompanying the first cargo the statement was made that the lumber had been shipped "by Hall & Co., agents." And upon the effect of this letter and these statements in the bills of lading, it was held by the court that the defendants had been so far informed of the fact that Hall & Co. were not the owners of the lumber as to render it their duty to inquire who did own it, and failing to do so that they were chargeable with the information they would have acquired if they had pursued that inquiry. The letter with these statements contained constructive information that Hall & Co. were not acting for themselves or in their own behalf in the sale and delivery of the lumber. They indicated that some other person or persons not disclosed were its proprietors, and this information was received by the defendants before any of the lumber had been placed in their possession. The information in this respect was unequivocal, and it could have been attended with but one result, and that was the unmistakable inference that Hall & Co. were not the owners of the lumber, and that prevented the defendants from making use of their debt against Hall & Co. as a set-off or counter-claim in the action. This point was considered in *Hogan* v. *Shorb* (*supra*), where it was said, to prevent the purchasers from relying upon the set-off, that "it must appear from the nature of the transaction, or from something which transpired before the contract was completed, that the vendee had good reason to believe he was dealing with an agent. In a commercial community no rule short of this will afford sufficient protection to purchasers." And this principle was also sanctioned in *Wright* v. *Cabot* (*supra*). But the notice or information acquired will be sufficient when it indicates the propriety of further inquiry as to the facts which may be supposed from it to have an existence. A general notice of this description is all that can be exacted under the rule. (*Judson* v. *Stillwell*, 26 How., 513.) And it will be effectual when it shall be received before the purchaser has acquired the property, or upon the faith

of its purchase placed himself in a position which he will after-
wards prove incapable of changing. No objection of that descrip-
tion can be taken to the effect of the information communicated by
Hall & Co. to the defendants, for no change in their situation took
place after the contract for the lumber was made and before this
information was received. Even in the conversation proved by one
of the defendants no intimation was given that the lumber was to
be shipped by Hall & Co., as agents, as an unfounded pretense or
device to protect their property against the lawful claims of their
debtors. Such a shipment of it, if the lumber belonged to them,
could not have been attended with that result. For it was only for
the reason that they acted as agents, and were not the owners of
the lumber, that a shipment of it in that form would protect it
against liability to seizure under attachments. If the defendant
relating the conversation had entertained doubt as to the motive of
Hall in the statement made by him, a further inquiry should have
been made or explanation required, but that was not done. The
statement was left without enlargement, by which the information
was given that the lumber would be shipped by Hall & Co., as
agents, to prevent trouble and avoid its attachment. This conver-
sation, as well as the letter and the bills of lading, contained the
information that Hall & Co. were acting as agents in the sale and
shipment of the lumber, and prevented the defendants from after-
wards receiving and paying for it by applying for that purpose the
debt owing to them by Hall & Co.

This view of the case was clearly presented by the court to the
jury, and the law, as it has been stated in the latest authority,
was read to them as their guide in the investigation which they were
to make. At the close of the charge several propositions were
embodied by the defendants' counsel in requests which the court
was asked to submit to the jury, but they were mainly denied for
the reason that they related to the state of the defendants' informa-
tion at the time when the lumber was ordered, and not at the time
when it was received by them. These propositions could not con-
sistently be charged by the court. For even if the defendants had
previously dealt with Hall & Co. as owners, without any disclosure
or intimation on their part that they were acting on behalf of
others, to and including the time when this lumber was ordered.

and the impression so created was corrected before any of the lumber was received, they could not -afterwards accept it and avail themselves of the balance of the indebtedness of the then known insolvent firm of Hall & Co. as a payment or set-off against the purchase-price. The jury could not have been misled by the use of the word "completed" in the directions they were bound to consider. What was meant to be conveyed by that term was the completion of the sale by the delivery of the lumber. There could be no misunderstanding as to that being the design, for all the evidence which was given tended to prove that the information conveyed concerning the agency of Hall & Co. had preceded the delivery of the first boat load of lumber. Besides that, the language made use of was identical with that receiving the approbation of the court in *Hogan* v. *Shorb* (*supra*). Neither of the propositions presented by the defendants could have been submitted to the jury for their control or government, but those brought to their attention by the court were all that could regularly be requested under the facts of the case for that purpose.

One of the defendants, in the course of his examination, was asked by their counsel whether they ever had any business transactions with Hall & Co. as the agents of McLachlin Brothers, and the answer to this was evidently excluded for the very obvious reason that it was merely an inquiry for the conclusion or opinion of the witness. The court also overruled the inquiries as to whom the witness understood to be the owners of the lumber and the principals in the transaction at the time of its sale and delivery. And the further question whether the witness ever knew, supposed or suspected that Hall & Co. were not the principals in this transaction, and whether they would have purchased the lumber if they had known or supposed that Hall & Co. were the agents of McLachlin Brothers. But, while the first of these questions was not allowed to be directly answered by the witness, the evidence given by the witness did in fact include it. For his detailed statement, as to the manner in which the business had been done, rendered it evident that in all his dealings with Hall & Co., to and including the time when this lumber was ordered, he understood and believed them to be the principals in these transactions. The same answer is equally as proper, to the

exception relied upon as to the second of these questions; and as to the third it could not have been material to know whether they would or would not have entered into the contract for the purchase of the lumber if they had known or supposed that Hall & Co. were acting as agents of the McLachlins. And the other inquiry can in like manner also be disposed of. It may be under the authority of *Gutchess* v. *Gutchess* (66 Barb., 483) and *Carr* v. *Breese* (81 N. Y., 584, 592), that these questions could in no legal view be required to be answered. But the point considered in these cases arose in a different manner from that in which it was presented at the trial. The knowledge or information received by the defendants was a material inquiry, and the rule certainly was very strictly applied which excluded the direct answers intended to be elicited from the witness. But as the effect of his evidence, as it was given, was clearly to bring the facts to the notice of the jury by excluding his more direct answers to these questions, no legal harm was done. The defendant who testified could not excuse himself from the effect of the letter by asserting his misunderstanding of its import. It was entirely plain and free from any ambiguity, and its force would not have been diminished in the least if he had been allowed to state what he understood from the letter. It may also with propriety be said as to each of these exceptions that the evidence left no substantial ground for doubt as to the fact that the defendants did receive information, before any part of the lumber came to them, that Hall & Co. were acting as agents in its sale and delivery. And that fact legally prevented them from relying upon their own indebtedness as an answer to the action brought against them for the balance of the lumber account.

Whether, as a matter of fact, the $5,000 received by Hall & Co. from the defendants in the month of November was remitted, as it was stated to have been by the witness Hall, to McLachlin Brothers, was in no manner material to the disposition of the case. Whether the remittance had been so made or not the plaintiffs, under the evidence, were at least entitled to have the case submitted as it was to the jury, and the defendants sustained no legal injury by the refusal of the court to strike out the testimony of Hall concerning the remittance. Upon the evidence submitted to them the jury were well warranted in rendering their verdict in favor of the

plaintiffs for the balance of the price of the lumber claimed in the action, together with the interest which had accrued upon it, and the judgment and order should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment and order affirmed.