### FINELITE v. DORIAN et al.

(Supreme Court, Appellate Division, Second Department. March 21, 1899.)

FRAUDULENT CONVEYANCE—EVIDENCE.

A conveyance, by a debtor, of certain notes and the chattel mortgage securing them, in payment of a debt, made nine months before judgment secured against the grantor, and at a time when such grantor had money sufficient to pay all her debts, is not fraudulent as to creditors.

Appeal from trial term.

Action by Alexander Finelite, receiver of Julia Dorian, against Julia Dorian and others. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

C. F. Swart, for appellants.
P. C. Talman, for respondent.

WOODWARD, J. The complaint in this action should have been dismissed on the motion of counsel for defendants at the close of plaintiff's evidence, on the ground that no conspiracy to defraud the plaintiff had been established, and that there was no evidence that the defendant Julia Dorian was insolvent, or that she did not have ample money or property with which to discharge the debt to the plaintiff, at the time of the transfer of the notes and mortgage involved in the controversy. The action is brought by Alexander Finelite, as receiver of Julia Dorian, in supplementary proceedings, and is brought to set aside a transfer made to the defendant William Craig by the defendant Julia Dorian of certain promissory notes, and a chattel mortgage, which had been given to secure the notes in question. It appears that Julia Dorian had accumulated about $1,500 while em-

ployed as a domestic, and that she conceived the idea of going into
business.    She had a sister, Louise Dorian, and the latter, acting for
Julia, rented an apartment house, with a restaurant in the basement.
The lease was made in the name of Louise, but Julia furnished the
capital, and it was alleged and denied that an arrangement was made
between the sisters that Louise should conduct the business until
Julia had been reimbursed the amount of her investment, when they
should become equal partners.    Soon after engaging in this enter-
prise, Julia decided to abandon her place as a domestic, and to take
charge of the business herself.    At this time there was a disagree-
ment between the sisters, and it was compromised by Julia agreeing
to pay Louise $500.    Louise afterwards brought an action, and re-
covered a judgment for this sum.    In the meantime the defendant
William Craig, who was engaged to marry the defendant Julia Dorian,
had been advancing money to Julia to meet the payments due to the
lessor of the property, and it was in evidence that these advancements
aggregated approximately $1,000, though there was no strict account
of the sums, which had been loaned to the defendant Julia Dorian.
Subsequently Julia Dorian sold the property to the defendant Joseph
Avallanet, who gave her in payment $1,000 in money, and certain
promissory notes aggregating $1,000, and a chattel mortgage to se-
cure the notes.    These notes were transferred by Julia Dorian to
William Craig, who had in the meantime become her husband, in pay-
ment of the sums which he had advanced to her.    This transfer was
made about nine months before the judgment was secured against the
defendant Julia Dorian, and there is absolutely no evidence to sustain
the contention of the plaintiff that this transfer was made for the
purpose of defrauding the plaintiff, who is the representative of Louise
Dorian, the judgment creditor.    The learned trial court says: "That
Craig loaned money to Julia Dorian is, to my mind, evident. · His
ability to do so was clearly established on the trial.    The amount
of money loaned is not clearly established.    It is not apparent why
the notes and the mortgage should pay the debt instead of the money,
unless to get them beyond the reach of the claim here represented by
plaintiff.    Such, I think, is the purpose which the evidence discloses."
If Craig loaned money to Julia Dorian, the latter has a clear right
to reimburse him, and, as all the evidence in the case tends to estab-
lish that the amount loaned approximated $1,000, it is difficult to
understand what difference it made, so far as the plaintiff is concerned,
whether the defendant Julia Dorian paid the defendant Craig in money
or in notes.    The money was as much in reach of the judgment credit-
or as the notes, and the defendant Julia Dorian having, at the time of
the transfer, the money necessary to meet this obligation, the plain-
tiff would not be able to establish fraud if the notes were transferred
absolutely without consideration, without some evidence outside of
this fact.    "An existing indebtedness alone," say the court in the
case of Carr v. Breese, 81 N. Y. 584, "does not render a voluntary con-
veyance absolutely fraudulent and void as against creditors, unless
there is an intent to defraud.    Van Wyck v. Seward, 6 Paige, 62.
This is especially the case when it is shown that the residue of the
property was amply sufficient to pay all debts."    In the case at

bar there was absolutely no evidence of an intent to defraud, while it is clear from the evidence that the defendant Dorian had, at the time of the transfer, sufficient funds to meet all her liabilities, so far as they were apparent, or so far as they have since been established. To hold, under such circumstances, that the defendants have been guilty of fraud vitiating the transfer, is to invade the realm of speculation, and to raise presumptions of fraud, where the policy of the law demands that they shall be proved. Bank v. Mead, 92 N. Y. 637; Truesdell v. Sarles, 104 N. Y. 164, 167, 10 N. E. 139; Kain v. Larkin, 131 N. Y. 300, 307, 30 N. E. 105. The Truesdell Case is directly in point on the case at bar, and is alone a sufficient authority for reversing the judgment.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.