# SANTIAGO QUILICHINI

*v.*

# JUAN AGOSTINI ET AL.

Mayaguez, Equity, No. 139.

1. A conveyance made several years before the filing of the bill to set it aside and subject the property to execution will not be set aside when the proof shows that, at the date of the conveyance, the grantor was solvent.

2. The fact that the conveyance was made without the payment of any consideration, and to a concubine of the grantor, does not alter the rule above stated.

Opinion filed November 15, 1906.

*Mr. Herbert E. Smith,* solicitor for complainant.

*Mr. Salvador Mestre,* solicitor for defendants.

RODEY, Judge, delivered the following opinion:

This cause comes before the court on the pleadings, the exhibits, and the evidence, for findings of fact and law, no findings having been made by the master. Counsel for complainant filed a brief with a supplement thereto, while counsel for respondents filed none whatever, and made no argument before the court, although requested so to do.

Quilichini v. Agostini.

Complainant by his bill seeks to show that the property described in the complaint really belongs to one of the principal respondents, although it stands in the names of others of them, and that the latter should be held trustees in the premises; that the property was transferred in fraud of creditors, and complainant being such a creditor, is entitled to have the same subjected to the payment of his debt. The suit has been pending for nearly three years. A large amount of evidence was taken in it. The pleadings were extensive before issue was joined, and a large number of exhibits was introduced, most of which are voluminous in character. The exhibits being all in Spanish, although accompanied by translations, are of a character that has required a good deal of labor from the court in their examination. The court has also expended a considerable amount of time in an examination of the more than usually large number of citations given in complainant's briefs.

A statement of the case may be made as follows: For a good many years previous to 1893, during the Spanish régime in Porto Rico, a family by the name of Agostini resided at and in the vicinity of Mayaguez in the western part of the island of Porto Rico, and were, it seems, planters and coffee raisers of considerable means. The record does not show just what the exact blood relation of all the members of this family mentioned in the record is, but it does show that two of the principal respondents, Juan Agostini and Pedro J. Agostini, are father and son respectively.

It appears that on February 16, 1893, Juan Agostini, the father, who had been a man of means, and perhaps still continued to be, made his four promissory notes, all of which, of course, were in Spanish, to one Pedro Agostini y Fecini. The first of these notes was for 1314.41 pesos and ran for six

Quilichini v. Agostini.

years, becoming due February 28, 1899; the second of them was for 1554.42 pesos and ran for seven years, becoming due February 28, 1900; the third was for 2081.19 pesos and ran for eight years, becoming due February 28, 1901; and the fourth was for 4,000 pesos and ran for nine years, becoming due February 28, 1902. It does not appear what transaction the giving of these notes grew out of. All of these notes, by a writing to that effect in the lower left-hand corner of each of them, were guaranteed, without stating that it was for value received, by the son, the respondent Pedro J. Agostini, in these words: "Garantizo el cumplimiento de esta obligación con renuncia de los beneficios de excusión y orden." Which, it seems, means that perhaps the guarantor virtually made himself a principal, because he guarantees their payment and renounces his supposed legal right to force the payee first to exhaust his remedy against the maker. All of the notes were thereafter duly indorsed by the payee to one Pedro R. Agostini, and thereafter by the latter to one Charles A. Beatley. Default was made in the payment of the whole of all of them, and Beatley thereafter, on November 17, 1902, some nine months after the last of the notes was payable, brought a suit against the father and son, Juan and Pedro J. Agostini, on the same, and, on the second day of December of that year, recovered a judgment against them on the notes on the law side of this court, which, when reduced to gold, amounted to $5,940.45, to which was to be added $24.20 costs. Thereafter, on December 31, 1902, execution was duly issued on the judgment, and later, on January 5, 1903, returned *nulla bona* by the marshal. A year later, on January 7, 1904, Beatley, who, it seems, was a citizen of the United States, for what appears on the face of the paper to be an adequate consideration, assigned this judgment to the

Quilichini v. Agostini.

complainant, Santiago Quilichini, a citizen of the Republic of France. It does not appear whether Pedro Agostini y Fecini, the original payee of the notes, was of citizenship different from that of the maker and guarantor thereof, who were Porto Ricans, but it appears no jurisdictional or other point was made on that account in the suit at law, where the judgment was taken on the default of the defendants, and they, at least, are probably now concluded as to that.

Eleven days after he acquired the judgment as aforesaid, the complainant, Quilichini, on January 18, 1904, filed this bill in equity against the said Juan Agostini, the original maker of the notes, Pedro J. Agostini, the guarantor of them as aforesaid, and against one Ana Merle, who is alleged to be the concubine of the said Pedro J. Agostini, and against one José V. Llanas y Ayala, to whom the said Ana Merle had made, or attempted to make, a recent intermediate transfer of the property in question as hereinafter set out; and against the ten illegitimate respondent children of the said Ana Merle, most of whom were minors, and to whom the said Ana Merle, through the said José V. Llanas y Ayala, had transferred, or attempted to transfer, the property in question.

It would not be profitable at this place to describe in detail the piece of real estate in controversy. Suffice it to say, that it is a farm known as "Noublet" (nearly all fincas or farms in Porto Rico have proper names by which they are known in the community and in the registry offices). It is situated over in the vicinity of Mayaguez and consists of 60.42 cuerdas and has a very considerable amount of improvements thereon. The respondent Pedro J. Agostini had owned this farm for a number of years, having purchased it from his father, the respondent Juan Agostini. On May 2, 1894, more than fourteen months

after guaranteeing the notes in question, the said Pedro J. Agostini conveyed this farm to the respondent Ana Merle, the deed setting out the alleged fact that he received 4,000 pesos therefor. This transfer, it will be noticed, was nearly five years before any of the four notes which the said respondent had guaranteed were payable, and about eight years before the last one, which was for the largest amount, would become due.

It is not in evidence that the said Pedro J. Agostini was indebted to any person whatsoever at the time he made this transfer in 1894, other than such contingent liability as could be claimed to exist because of the guaranteeing of the notes in question; but it is in evidence that he was at such time, and for at least six or seven years thereafter, a wealthy man in the said community, with large credit. In fact, counsel for complainant in the fifth paragraph of his brief sets out: "That Pedro J. Agostini was a man of property at the time of the alleged sale on May 2, 1894, with a large credit in the house of Schultze & Company of Mayaguez, and capable of making large purchases, and known as a wealthy man, and, up to within a couple of years last past, or just before our original suit (November, 1902), was possessed of a large credit in said house, which credit had been of some fifteen years' standing." A Mr. Federico Philippi, a member of the firm of Schultze & Company of Mayaguez, testified in the cause that the respondent Pedro J. Agostini, between the latter part of 1898 and the latter part of 1899, possessed a credit in his house of Schultze & Company of nearly 35,000 pesos, which remained there for some time, said Agostini paying it out gradually from time to time by checks, orders, and transfers, the last of it being a few dollars which he checked out the latter part of July, 1900, and that his house had had business dealings

with himself and his father for some fifteen or more years previously.

It appears in evidence that on November 3, 1902, or some nine months after the last of the notes was due, and eight and a half years after she had received the property in question, the respondent Ana Merle transferred it by a proper deed, for an alleged consideration of $3,000, to the respondent José V. Llanas y Ayala, and nine days later, on November 12, 1902, the said Llanas retransferred it by her request, when he asked to rescind the sale, to her ten children, who are made respondents herein as aforesaid, both deeds being recorded the same day. A great deal of evidence was introduced by complainant to show the bad faith of this transfer of the farm to Llanas and its retransfer to the children, but, even if this is true, we do not think it is material in the view we take of the case.

It also appears from the evidence that along in about the year 1899 the respondent Pedro J. Agostini began to put property out of his hands and to give some of it to this woman, Ana Merle, and began to dispose of his property pretty generally, and that he was perhaps indebted somewhat at this latter date. At least one creditor, a Mr. Todd, after getting judgment against him for some two or three thousand dollars, followed one of the transactions where property had been transferred while a chancery *lis pendens* was in force, and recovered it. That case, Romeu v. Todd, ante, p. 9, is now pending in the Supreme Court of the United States on the important question of the binding force of a chancery *lis pendens* in this court in Porto Rico.*

The court has never seen any of the parties mentioned in the bill of complaint, and has no personal knowledge of any of

*[Reversed in 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724.]

them or of their situation, save as shown by the record, and does not know, save in that way, what their domestic relations are. The record shows a peculiar condition of affairs and would lead to the inference that there was no law enforced in Porto Rico in Spanish days, of the character of the act of Congress known as the Edmunds act. Whether this man Pedro J. Agostini has a lawful wife does not appear, but it is in evidence that he is a white man and that Ana Merle is an illiterate negro woman, the daughter of one Isabel Merle, who was perhaps a slave or servant in the Merle family of that vicinity for many years in Spanish days. It is further in evidence that the respondent Pedro J. Agostini lived with this woman, Ana Merle, at times for many years on different ranches or fincas, including the one in question, and that he has had by her at least ten children, that she, or they, are bringing up and sending to school. There is also considerable evidence showing that Ana Merle has always considered herself a single woman, because she has, at different times, had overseers or business agents to manage her affairs, to whom she has given powers of attorney to do so, and at times she gave such powers of attorney to the respondent Pedro J. Agostini, who transacted considerable business for her in many ways, even when living in her house. Nevertheless, it is unquestionably proved that both the said Pedro J. Agostini and the said Ana Merle considered themselves not to be husband and wife, and that the entire community was of the same opinion, and considered them as living together without the sanction of law, and that they went by their separate names in the community. In fact, it was proved that several times after the birth of some of the children they both, with many witnesses, went before the local courts and the local registry offices, and, in compli-

ance with some local law, as it appears, acknowledged the parentage of the illegitimate children, and had such fact duly passed upon by the courts and recorded in the registry offices. Evidence showing this fact as to the children, Edgardo Merle, born April 28, 1899; Gaspar Merle, born January 6, 1893, and Adela Merle, born October 18, 1894, was duly presented. It will be noticed that the children were given the mother's name, evidently because of this illegitimate birth.

Speaking of the equities of the parties from a moral point of view, it does not appear, as stated, just who this Pedro Agostini y Fecini, to whom the notes were made, is, or what consideration he paid for them, save from the face of the notes. Neither does it appear what consideration Pedro R. Agostini gave for them when they were indorsed to him, nor what amount he received for them when he sold them to Beatley, or whether the latter in fact received $5,000 therefor, as set out in the assignment he made of the judgment to Quilichini. The respondents are probably all concluded as to these questions, because it is well settled that a judgment cannot be collaterally attacked as a general proposition, but there are intimations in some cases that a vendee of property claimed to have been sold in fraud of creditors, not having been a party to the original suit on which the creditor obtained the judgment, does have a right to attack the judgment collaterally in order to show whether or not the party seeking to set the conveyance aside is in fact a creditor. Thomson v. Crane, 73 Fed. 333; Esty v. Long, 41 N. H. 105. The answer, however, in this case, does not attack the judgment on this ground.

A good deal of argument is made in complainant's brief, based on the peculiar and illegal relation of Pedro J. Agostini and Ana Merle, and on the alleged fact that she is an ignorant

Quilichini v. Agostini.

and illiterate negress, in an apparent effort to induce the court to resolve all doubts against these two particular respondents, and hold the property in question subject to the payment of the judgment now owned by complainant. With the social status and doings of these respondents or the consideration behind the making of the several assignments of the notes in question, the court has nothing to do save in so far as the relation and acts of such parties under the law raise presumptions or force the court to resolve questions of fact one way or the other. See Kirby v. Tallmadge, 160 U. S. 379, 40 L. ed. 463, 16 Sup. Ct. Rep. 349; Clements v. Moore (Clements v. Nicholson) 6 Wall. 299, 18 L. ed. 786.

It is unquestionably the settled law, in the absence of any local statute requiring a different rule, in so far as the Supreme Court of the United States is concerned, and which, of course, is binding here, that a husband has a right to settle a portion of his property upon his wife and thus provide against the vicissitudes of fortune, when it can be done without impairing existing claims of creditors. Mr. Justice Field, when stating this rule in the case of Bean v. Patterson, 122 U. S. 499, 30 L. ed. 1127, 7 Sup. Ct. Rep. 1298, reviews the leading cases in that court upon this subject, beginning with Sexton v. Wheaton, 8 Wheat. 229, 5 L. ed. 603. The case is profitable reading on this important question.

We believe that it is also now a well-established rule that creditors whose claims arise after the making of a transfer complained of, and who were not induced to extend the credit on representations that the debtor owned the property in question, will not be heard to complain of it, unless they can also show that the debtor and the vendee contemplated the creation of the debt themselves before the transfer was made. Hinde v.

Quilichini v. Agostini.

Longworth, 11 Wheat. 198, 6 L. ed. 454; Garner v. Second Nat. Bank, 151 U. S. 420, 38 L. ed. 218, 14 Sup. Ct. Rep. 390; Graham v. La Crosse & M. R. Co. 102 U. S. 148, 26 L. ed. 106. In this latter case, Mr. Justice Bradley holds that even a corporation, solvent at the time, and with no intent to defraud creditors, can dispose of its land for an inadequate consideration or by voluntary conveyance without its subsequent creditors having any right to question the transaction.

Whether these notes, being dated about a year before the transfer in question, although being then only a contingent liability, can be said to have been an existing previous debt, is not so well settled. See Thomson v. Crane, supra, and the extracts from many cases cited therein. But the question is settled, we think, that if, at the time of the making of the transfer, there was no intent in the minds of the parties to defraud the holder of those notes, and the respondent Pedro J. Agostini reserved, or had other ample means at the time with which to pay all his debts, including even this then somewhat remote contingency, the transfer cannot be questioned. See Mattingly v. Nye, 8 Wall. 370, 19 L. ed. 380, and cases cited; Carr v. Breese, 81 N. Y. 584; Lloyd v. Fulton, 91 U. S. 480, 23 L. ed. 363. In the latter case, a husband who had settled some property on his wife was solvent at the time and still possessed two and one-half times the amount of his debts. The transaction was based on good faith and free from the taint of any dishonest purpose, and the court upheld the transaction as against creditors. The American & English Encyclopedia of Law, 2d ed. vol. 14, p. 305, after showing in previous pages the great conflict that formerly obtained in the opinion of judges as to whether or not voluntary conveyances should be sustained when made at a time when the grantor was not in-

solvent, proceeds to assert that: "It is therefore held in a majority of jurisdictions that if the donor, at the time of the gift, was in prosperous circumstances and possessed of ample means to pay his debts, and the gift was a reasonable one according to the purpose for which it was made, it is valid and will not be vitiated by the subsequent insolvency of the donor, not produced by causes existing at the time of the conveyance." Many English authorities are cited in support of this doctrine and a large number of citations from the Supreme Court of the United States and from a large number, if not an actual majority, of the states of the Union.

We have examined all of the citations to the local statutes in complainant's brief and we can find nothing in the sections called to our attention of either the mortgage law or the Civil Code that shows the law here in Porto Rico previous to the American occupation to have been different in any substantial aspect from the law of the several states of the Union, as to the complete dominion of a man over his property when not indebted or intending to defraud; but we do find that by § 190 of the present Civil Code, which is but a re-enactment of § 143 of the law as it was before the adoption of the Code, the father of illegitimate children is obliged to support the mother and the children until the latter have arrived at the age of eighteen years, and is obliged to bear the expense of their education and of giving such children a profession or trade in accordance with his social position. It appears, therefore, to the court, that the law as above quoted, with reference to the right of the husband to settle upon his wife, even without consideration in money, some of his property at a time when he is not indebted, or when he has plenty of other means to pay what debts he owes, has peculiar application; and we think this man, Pedro J. Agos-

tini, had a legal right in 1894 to make the transfer in question. He was obliged by law to support this woman and these children, and if he did it without depriving himself of ability to pay the debt in question, we do not think the law now permits this complainant to set the transaction aside. If, in fact, Agostini did, at a much later date, as the proofs tend to show, convey some of his property in fraud of complainant as a contingent creditor, the bill should have sought to reach that particular property, and not the property in question.

We feel bound on the evidence to find the fact to be, and we do so find, that respondent Pedro J. Agostini, in May, 1894, when the transfer in question was made, had no intention whatsoever of defrauding the holder of these notes; and we further find that the notes were not accepted by anyone and the credit was not extended on the strength of the said Agostini being possessed of or owning the property in question. We think these findings fully warranted, notwithstanding the fact that it is probably true, under the evidence, that seven or eight years later the said Agostini did proceed to dispose of his property with intent to hinder, delay, and defraud his creditors, including even the holder of these particular notes. But we do not think this in any manner militates against the bona fides of the former transaction. The transfer in question was made by a proper public instrument, as required by law, and the same was duly recorded and remained on the records without being attacked from 1894 until 1904, a period of about ten years. The presumption from all of the evidence in the case, although not entirely satisfactory, is that the maker of the notes in question was a man of means at the time of the making of the same, and for many years thereafter; and it is certain that the son, Pedro J., was then wealthy

and remained so for many years thereafter, and we so find the fact to be.

There is abundant evidence that, no matter how Ana Merle may have lived through these intervening years with the respondent Pedro J. Agostini, she exercised dominion and ownership over the property in question adverse to all the world; and we do not think this dominion is in law affected by the fact that the said Agostini was living at her house most or a great portion of such time. The burden is upon complainant to show his right to subject this particular property to the payment of his debt, by a preponderance of the evidence, and to show that, in equity, it belongs to Agostini. Neither the woman Merle nor Agostini went upon the stand, for what reason the court is not advised, unless to avoid a painful cross-examination. We are aware that, because the transfer is attacked, all presumptions will be taken against them because of their failure to thus go upon the stand in this civil proceeding. Kirby v. Tallmadge, 160 U. S. 379, 40 L. ed. 463, 16 Sup. Ct. Rep. 349. But giving that fact all the weight to which it is entitled, we cannot, on the evidence before us, see how the complainant is entitled to recover, and therefore the bill will be dismissed with costs, and it is so ordered. Any notice of *lis pendens* or warning notice that may have been filed in the premises will be canceled in the proper registry office.