### TALCOTT v. THOMAS et al.

(Supreme Court, General Term, Fifth Department.  January 18, 1893.)

1. SERVICES OF WIFE—LIABILITY OF HUSBAND.

Defendant P. made an assignment to defendant J., giving preference to his (P.'s) wife, "for his board in the house where he and his said wife and family resided together, including the services of his wife therein," It appeared that the wife of P. leased the house in which the family lived, took out a license in her name, and assumed to keep a restaurant. The business consisted in the sale of liquors at the bar, and an occasional meal, served in the family dining room.  P. lived in the house, and the wife employed no servants. *Held*, that such circumstances did not take the case out of the rule that the wife owed to the husband the services rendered in a domestic capacity, and that no valid indebtedness could be incurred therefor.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—ACCOUNTING BY ASSIGNEE.

The fact that an assignee has made a final accounting to and is discharged by the county court will not excuse him from making a further accounting to a referee appointed by the supreme court for that purpose in an action duly brought to set aside the assignment for fraud.

Appeal from judgment on report of referee.

Action by James Talcott against Peter Thomas and John Thomas to set aside an assignment. From an interlocutory judgment on the findings and decision of the court, and from a final judgment entered on the report of a referee appointed by the interlocutory judgment to take an accounting, defendants appeal.  Affirmed.

Sanford E. North, Esq., to whom the cause was referred by the interlocutory judgment, filed the following opinion on December 12, 1891:

"On the 16th day of March, 1885, the defendant Peter Thomas made a general assignment for the benefit of creditors to his brother, the defendant John Thomas.  The assignor had carried on the business of harness maker.  Very soon after the assignment, the plaintiff in this action replevied a quantity of goods he had sold to Peter Thomas.  The assignee defended, and upon a second trial succeeded in recovering a judgment for the return of the goods on the payment of $304.87 and costs.  The judgment was paid in money collected on execution, October 20, 1886, the assignee receiving $200 thereof, the balance being retained by his counsel for services.  On the 21st day of August, 1886, the plaintiff herein recovered a judgment against Peter Thomas for $434.72 for the goods sold to him. On the 30th day of August, 1886, the present action was begun by the service of a summons upon the assignee.  The person making the service informed Mr. Thomas that the action was to set aside the assignment, and notified him not to pay out any money. The action was tried before Justice Childs, and on the 6th day of July, 1881, judgment was entered setting aside the assignment as against the plaintiff.  By the terms of the judgment it was referred to me to 'take and state the accounts of the defendant John Thomas, as assignee of the said Peter Thomas under said assignment, and to ascertain the amount with which said John Thomas is chargeable as applicable to the payment of the plaintiff's judgment and the costs of this action.'  After the action was begun, the assignee instituted the ordinary proceedings for the settlement of his account in the county court, and on the 8th day of February, 1887, the customary order was made, discharging the assignee. The plaintiff in this action did not present his claim to the assignee, and therefore was not cited upon the accounting.  The plaintiff now claims that the assignee is chargeable, under this proceeding, with the $304.87 received by him from the replevin suit, with $193.50 retained by him as preferred creditor, with several payments made after this action was begun, and with divers other sums, which will be referred to hereafter.

"It is insisted in behalf of the assignee that there are no funds for which he is liable.  Exhaustive briefs have been filed by counsel on either side, and although the amounts involved have not been large, the contests growing out of this assignment could hardly have been more closely and sharply contested if great interests had been at stake.  At the outset of this discussion the plaintiff is met by the proposition that the adjudication of the county court is a complete bar

to any proceedings for further accounting by the assignee. The assignee, upon the settlement, accounted for all the moneys which had come to his hands, including the avails of the replevied goods. The question thus presented is an interesting one, and, so far as I have been able to discover, the precise point just referred to has never been decided in this state. I am satisfied that defendants' position cannot be maintained, and that it only remains for me to determine what moneys, under the well-settled rules applicable to this proceeding, the assignee must be charged with. In deciding this matter I think each step by which the learned counsel for defendants reached his conclusion may be conceded, without adopting the conclusion itself. It is quite true, as claimed, that the proceedings had in the county court are deemed as proceedings in a court having general jurisdiction to do all and every act relating to the assigned estate; that its jurisdiction shall be presumed in support of the order and decrees therein; and that, after the filing and recording of an assignment, the court may exercise the power of a court of equity in reference to the trust or any matter involved therein; and that orders and decrees made in the course of the proceeding have the same force and effect as if made in an original action brought in the county court. This, in substance, is provided by the assignment act. On the other hand, I believe the fact in this case to be that as to all proceedings taken after this action was begun the plaintiff was not a party, and that he was wholly unaffected thereby. His position is not that of a creditor who has simply neglected to present his claim, and who is therefore cut off from sharing in the distribution. Such creditors submit to the jurisdiction of the court, come in under the assignment, and are bound thereby, just as much where they have failed to present their claims after due advertisement as where they have presented them, and shared in the dividends. It is simply a question of laches with such. With a creditor who elects to stand outside the assignment the case is wholly different. He brings his action to set aside the assignment. He repudiates its terms, and denies its validity. He brings his action at his peril. If he fail, he is left out on the distribution, but, if he succeed, the decrees made after his action was begun would have no effect upon him whatever. My disposition of the claim of counsel is to the effect that, plaintiff having created an equitable lien upon all assets remaining in the hands of the assignee at the time of the commencement of the action, that lien, upon the entry of the judgment setting aside the assignment, became a vested right, paramount to all other claims, and enforceable to the extent of the amount of his judgment. It is not a question of the lack of jurisdiction in the county court, or of any superior power possessed by the supreme court; for neither the county court nor any other court in which the accounting was or might have been had possessed any jurisdiction whatever of a creditor who thus elected to stand without the terms of assignment. It may readily be conceded that between a controversy between the insolvent estate on the one hand and a given creditor on the other, both courts could not have jurisdiction at the same time; and it occurs to me that the fact that the supreme court acquired jurisdiction at the beginning of this action before the county court was moved for final settlement conclusively refutes the theory that the decree of the county court has debarred the plaintiff from the remedy to which his judgment declares him entitled. The proceedings in the county court did not constitute an action. The entire proceeding was in theory 'for the benefit of creditors,' and, in case any creditor repudiated the offers of 'benefit' under the assignment, the court could not compel its jurisdiction to be exercised over him. The judgment of the supreme court is to the effect that as to the plaintiff there is no assignment. By commencing his action the jurisdiction of the supreme court was, on the 30th day of August, 1886, lawfully invoked to answer the plaintiff's demand whether, to him, there had been an assignment; and when, on the 6th day of July, 1888, judgment was rendered in his favor, this question was answered in the negative, and the lien which plaintiff acquired by beginning his suit at once became vested. The whole proceeding for an accounting was intermediate these two dates. It was too late for the county court to acquire jurisdiction. It never had any over the plaintiff. The answer of the supreme court dated back to the time the action was begun; in fact, it went further, and declared that, except as to payments made by the assignee before the beginning of the action, lawfully, in good faith, and in accordance with the provisions of the assignment, that instrument had no effect upon the plaintiff's rights from the hour it was drawn.

"The authorities cited in behalf of the defendants are not opposed to these principles. In their relation to the doctrine I have sought to enunciate, it may be said. in the language of Judge Folger in a celebrated case, (Lange v. Benedict

73 N. Y. 12–37:) 'These are not antagonistic principles; they are simply counter-vailing.' The case of McLean v. Prentice, 34 Hun, 504. is cited to show that, had this action been begun after the final decree of the county court. such decree would have been a bar to the action. This is obviously true, for the double rea-son that the creditor would by such delay have submitted to the jurisdiction of the court in which the accounting was had, and there would have been no undis-posed fund upon which he could have acquired a lien. In Re Dare. 13 Daly, 220, it was held that the pendency of an action to set aside the assignment was not a bar to a proceeding for an accounting. The reason assigned is that to wait the final result of such an action might result in indefinite delay, and yet it is not there decided that the court in which the accounting was had could effectually dispose of a fund upon which a lien had been acquired prior to the accounting by a creditor standing outside the assignment, and refusing to accept its pro-visions. The result of the doctrine which the defendants seek to uphold would be that an assignee who had been sued to vacate an assignment would only have to bestir himself, file his account, issue a citation, or get the satisfied creditors to waive citation, and then procure a decree for his discharge. I believe no court would uphold such a proceeding, and it seems to me that an assignee accounting after the commencement of the action to set aside the assignment should inform the court by his account of the pendency of the action, and ask to have such funds as may have been on hand when the suit was begun retained to abide the event of the action, with a provision in the decree for a further accounting. It seems to be well settled that the plaintiff, by beginning his action, acquires a lien upon all property which has come to the hands of the assignee, except such as he has lawfully paid out in accordance with the terms of the assignment. Scouton v. Bender, 3 How. Pr. 185; Meyer v. Hazard, (Sup.) 1 N. Y. Supp. 680, and the au-thorities there cited; McDonald v. Moore, 1 Abb. N. C. 53–57. This being the case, it seems to me entirely inconsistent that by any proceeding whatever the county court could in any manner or to any extent destroy, modify, or change the character of that lien during the pendency of the action. The assignee could do nothing to destroy the plaintiff's lien except to procure a judgment in his own favor in the suit. The action in the supreme court was an action in hostility to the assignment, and so long as it was pending the plaintiff had no right to ap-pear in the special proceeding instituted by the assignee for an accounting. Mills v. Parkhurst, (Sup.) 5 N. Y. Supp. 730, since affirmed at general term. (Sup.) 9 N. Y. Supp. 109. It cannot be possible that the courts should hold that a creditor is to be concluded by a proceeding to which he was not a party, and in which he would not have been permitted to appear for any purpose whatever.

"Coming now to the different amounts for which the assignee must account, I think he must be protected in the payment of the charge made by his counsel for defending the successful replevin suit. It was the duty of the assignee to defend the action. As to the balance of $200, he must account. He had recovered his judgment when this action was begun, but it was collected and disbursed during the pendency of this action, and, under the rules to which I have adverted, the plaintiff is entitled to the same. The payment of $193.50 to C. E. Fish, made February 8, 1887, and the payment of $45.50 to R. O. Holden & Son and $11.25 to Dodgson, Bostwick & Co., both made on the same day, must likewise be accounted for. It is suggested in defendants' brief that it appears by the testimony of the assignee taken upon this hearing that these payments were made February 8, 1886, instead of 1887. Mr. Thomas did testify that he disposed of the last of the assigned estate February 8, 1886. and says: 'At that time. 1 think, I had paid to the different creditors under the assignment all the moneys that were in my hands.' This statement was clearly in error, and is refuted by the witness him-self. His account, sworn to and filed February 8, 1887, in evidence in his own behalf, shows the Fish claim unpaid. The decree. dated the same day, and which is in evidence, recites that since the account was the filed voucher had been pro-duced. and the payment was therefore credited. The vouchers in evidence from Mr. Fish, as well as those from R. O. Holden & Son and from Dodgson, Bostwick & Co., bear date February 8, 1887. making it perfectly clear that Mr. Thomas erred a year when he gave February 8, 1886. as the date of his last disbursements, and all these claims must therefore have been paid from moneys in his hands when this action was begun. The sum of that $193.50, retained by the assignee upon his preferred claim, must likewise be accounted for. Coope v. Bowles, 42 Barb. 87; Bostwick v. Beizer, 10 Abb. Pr. 197. It is claimed in behalf of Mr. Thomas that he did not in fact have this money to his own use. but paid it out for the benefit of other creditors. He says: 'I retained, as creditor, $193.50 under the

assignment, from the money in my hands as assignee. Certain claims were paid in full; the shares of Mary V. Thomas [assignor's wife] and myself being used for that purpose.' This does not help matters any. The first preferred creditors took the whole fund, and received sixty-four per cent. If the assignee saw fit to donate his dividend in order to pay some one else in full, it was not a payment in accordance with the direction of the assignment, and cannot avail here. The amount retained by the assignee as commission—$10.64—cannot be held by him as against the plaintiff, as to whom there was no assignment. The assignee, after closing the store for three days for inventory, opened it again, and for eleven months carried on the business ' as assignee.' During the time he paid the assignor $376, as he states in his account, ' for services as salesman in disposing of the stock assigned, and for labor in connection with assigned estate.' He also paid his brother, Nathan, $376, and James Short $201.75, for ' finishing and completing harnesses and other property and in a finished condition at the time of assignment, and repairs;' $33.13 was paid for leather and trimmings for unfinished work; $511.07 for rent, $18.32 for fuel, $27.75 for insurance, and $24.85 for gas. As a result of all this expenditure, the assignee received $250 for manufactured work and $289.32 for repair work. It is stated by counsel for plaintiff that the finding of the trial judge to the effect that the business was carried on at a loss of over $900 is in evidence before me. This is an error. The judgment in this case, a part of which constitutes the order of reference herein, is, no doubt, before me, but the findings affording a basis for that judgment were not offered in proof, and I doubt their competency. At any rate, I shall not consider them. There is adequate proof in the testimony of the assignee, and in his account, to authorize me to determine, as I do, that there was a large loss created, under circumstances which cannot possibly protect the assignee. For the purpose of this accounting, we need only consider the question of the employment of help in the shop.

Paid Nathan Thomas ............................................................$376 00
  " James Short.................................................................. 201 75
  " for new stock...... .......................................................... 33 13

$610 88

Received from new work and repairs ............................... 539 32

Loss............................................................................$ 71 56

"No part of the store rent, the money paid assignor, nor the costs of lights, fuel, or gas, amounting to $956.99, is charged in making up the above item of loss. At the end of eleven months the stock was still largely, and, I infer from the evidence, mostly, undisposed of, and was turned over in bulk to assignor's wife, who took it to apply on her claim and the claim of $2,450 in favor of assignor's father. It is not necessary to determine more closely the extent of the loss. The amounts already determined upon are more than enough to satisfy plaintiff's claim. I need not cite authority in support of a principle so well established as that an assignee continuing the business of his assignor does so at his own risk, and, if the venture results in loss, he must bear it. As was said by the court in Levy's Accounting, 1 Abb. N. C. 177–185, citing Bish. Insolv. p. 350: ' While the judicious efforts of an assignee for the benefit of creditors to carry on the business of the assignor, or to convert the assigned property into cash through deferred credits, by manufacturing of raw materials, or altering goods into such other kinds of property as might prove more available, might be regarded as more advantageous than a peremptory sale, and be held as morally commendable, such efforts and experiments are at the risk of the assignee and his sureties, so far as they prove unprofitable, and are not assented to by the creditors.' And the same rule was laid down by the court of appeals in Re Dean, 86 N. Y. 398. See, also, In re Rice, 10 Daly, 1; In re Orsor, Id. 26; In re Petchell, Id. 102; In re Rauth, Id. 52; In re Marklin, Id. 122. These cases all apply to an accounting under the assignment, and have even greater force in a proceeding like the present, where the assignment, having been held invalid, can only shield the assignee in so far as he has in good faith, before the commencement of the action, expended funds in strict compliance with the assignment and the terms of the law.

"As to the claim made by the plaintiff that the assignee is liable for the payment made to apply on the preferred debt of $2,450 in favor of Peter P. Thomas, I need only say that I do not think the assignee in any sense liable at this time for that amount.

The amount due plaintiff on his judgment of August 31, 1886, at the
   date of this report......... ..................................$563 17
Due on judgment for costs in this action ........................... 107 53

    Total due plaintiff........... ................................$670 70

"To meet this the assignee must be charged. as hereinbefore indicated, with
the following amounts, or so much thereof as may be required:

Received from judgment in replevin...............................$200 00
Retained as preferred creditor....................................... 193 50
Paid C. E. Fish after suit began............... ..................... 193 50
  "  R. O. Holden & Son after suit began........................... 45 50
  "  Dodgson, Bostwick & Co. after suit began...................... 11 25
Retained as commissions ........................................... 10 64
Part of loss on business........................................... 71 56

                                                                        $725 95

"There are many points urged by the learned counsel for defendants which I
have not here discussed. All of them have been carefully considered, and the
conclusions to which I have arrived have been reached after a thorough study of
the very full and able briefs presented, and a careful examination, not only of
the authorities cited, but of many others."

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

E. A. Washburn, for appellants.

N. E. Clark, for respondent.

DWIGHT, P. J. The action was in the nature of a creditors' bill to
set aside a voluntary assignment made by the defendant Peter to the de-
fendant John Thomas, as being in fraud of creditors, and to obtain pay-
ment of the plaintiff's judgment out of the assets of the assignor which
had come into the hands of the assignee. All the facts necessary to en-
title the plaintiff to maintain such an action were established by the
pleadings, and the facts upon which the trial court based its conclusions
adverse to the validity of the assignment were established by uncontra-
dicted evidence. Those facts were, in brief, that by the assignment pref-
erence was given to an alleged indebtedness of the assignor to his wife
"for his board in the house, where he and his said wife and family re-
sided together, including the services of his wife therein." The subject
of this preference was characterized in the findings of fact as a pretended
indebtedness, and by the conclusions of law it was declared to constitute
no obligation on the part of the assignor as against his creditors, and as
to them the assignment was declared fraudulent and void by reason of
such preference. The circumstances of the alleged indebtedness, as tes-
tified to by the wife, were as follows: The wife of the assignor was pos-
sessed, at the time of her marriage in 1865, of a small sum of money,
—$400 or $500. What became of the money in the mean time does not
at all appear; but in 1881 she went into the business of keeping "a res-
taurant" in the same house in which she lived with her husband and five
children, all under the age of 21 years. The restaurant business con-
sisted of the sale of liquors at a bar, and an occasional meal served in
the family dining room. The wife took the lease of the house and the
license to sell liquor in her own name. She employed no servant, but
did all the work of the house herself, with the aid of the minor

children of herself and the assignor. The oldest son tended the bar most of the time, and when he was away the wife, and sometimes the assignor, waited on customers. We think there is nothing in these circumstances to take the case out of the rule so well established in this state that, notwithstanding the married woman's act, the wife still owes to the husband the services rendered in a domestic capacity to him and his children, and that for such services a valid indebtedness cannot be incurred. Coleman v. Burr, 93 N. Y. 17–25; Blaechinska v. Howard Mission, 130 N. Y. 497, 29 N. E. Rep. 755; Brooks v. Schwerin, 54 N. Y. 343. The fact that the wife was carrying on a separate business at the same time does not change the relation in which she stood, nor the obligations which she owed to her husband. The board which he received in his house was in large part the product of the labor of his wife and his minor children, to which he was entitled without charge, and for which he could incur no indebtedness which could either be enforced against him or preferred to the just claims of his creditors. We can have no doubt of the correctness of the findings and conclusions of the trial court in the respect mentioned, nor of the judgment based thereupon.

The remaining appeal in this case is from the final judgment entered on the report of the referee appointed by the interlocutory judgment to take an accounting of the assigned estate which had come into the hands of the assignee. The basis of this appeal is the contention on behalf of the defendants that an accounting had in a proceeding under the general assignment act, instituted in the county court since the commencement of this action, was a bar to any further accounting by the assignee, and that the discharge of the assignee in that proceeding was conclusive upon the plaintiff herein. We regard this contention as wholly untenable. The action and the proceeding are wholly opposed to each other in purpose and in theory. The one is in furtherance of, the other in hostility to, the assignment. The one assumes its validity, the other asserts that it is void and of no effect. If the action prevails, there is no assignment, and the proceeding goes for naught. By the commencement of the action the plaintiff acquired an equitable lien, to the extent of his judgment, upon the assets of the assigned estate, which, upon the recovery of judgment for the relief sought, became enforceable against such assets as of the date of the commencement of the action. Edmeston v. Lyde, 1 Paige, 637; Eager v. Price, 2 Paige, 333; Knower v. Bank, 124 N. Y. 559, 27 N. E. Rep. 247. Of course, such a lien cannot be divested by any proceeding instituted by the assignee subsequent to the commencement of the action. The principles thus briefly stated are fully and well elaborated in the opinion of the learned referee by whom the accounting herein was taken. We have no doubt of the correctness of his conclusion that, the assignment having been adjudged void as to the plaintiff, he was entitled to an accounting of the assets of the estate as they were at the time of the commencement of his action, notwithstanding the accounting already taken under the assignment in a proceeding subsequently commenced. We find, moreover, no valid objection to the result reached by the accounting so taken, but are of opinion that

the assignee was properly charged with the items reported against him. Both the interlocutory and final judgments should be affirmed.

Judgments appealed from affirmed, with costs, payable out of the assigned estate. All concur.