(39 App. Div 241.)

### CONGER et al. v. COREY et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

FRAUDULENT CONVEYANCE—PROPERTY IN NAME OF WIFE.

In 1893 a married woman owned no property. Shortly afterwards she commenced keeping boarders. Her husband testified to an "arrangement" whereby he was to supply products from his farm and groceries from his store, and that he and his daughter were to live in the family, and the

wife was to have all the board money. Two months before a general assignment by the husband, in 1896, the wife took a conveyance of a house and lot from a third person, paying $930 in cash, and assuming a mortgage. At the same time, she had a mortgage on her husband's property for $624. In an action by the husband's creditors to have the house and lot adjudged the property of the husband, neither husband nor wife testified, and no attempt was made to show how much was made by keeping boarders. The husband testified on a supplemental examination that his wife knew nothing about the mortgage until his failure, and that there was no accounting between them, and that he gave it of his own volition, without consulting her. There was evidence that in 1894 both husband and wife stated to third persons that the board proceeds were to be devoted to paying debts. *Held*, that the house and lot should be adjudged the husband's property.

Appeal from special term.

Action by William H. Conger and others against William W. Corey and others. From the judgment in so far as it adjudges that certain property belongs to defendant Cynthia M. Corey, plaintiffs appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and SPRING, JJ.

John N. Carlisle, for appellants.

Bradley Winslow, for respondents.

FOLLETT, J. This action was begun September 10, 1896, by several judgment creditors of William W. Corey (1) to have about five acres of land, conveyed April 4, 1896, by Benjamin Hodge to Cynthia M. Corey, by a deed executed and recorded April 9, 1896, adjudged to be the property of William W. Corey, and subject to the claims of his creditors; (2) to set aside as fraudulent a mortgage, executed May 8, 1896, by William W. Corey to Cynthia M. Corey, his wife, and Grace E. Corey, his daughter, to secure the payment of $1,128, and recorded on the same day. The court held that the mortgage was a valid security in the hands of Grace E. Corey to the extent of $504 for services rendered her father, but invalid as to the remainder, which represented the interest of the wife therein. Grace E. Corey is not a party to the action. From the part of the judgment holding the mortgage to be a valid security to the extent of $504 no appeal has been taken. The court also held that the land described in the foregoing deed was paid for by Cynthia M. Corey out of moneys which she had earned by keeping boarders between February, 1893, and the date of the deed, April 4, 1896. From the part of the judgment adjudging that this land was the property of the wife, and not subject to the claims of the creditors of William W. Corey, an appeal is taken. Prior to 1892 the defendant William W. Corey was a farmer, and in March of that year he removed to the city of Watertown, and entered into partnership with Orrin A. Edmonds (the brother of his wife), under the name of Edmonds & Corey, engaged in business as retail dealers in groceries. Each partner contributed between four and five hundred dollars to the capital stock of the firm. The business was continued for 11 months, when it was dissolved, Mr. Edmonds saying to the defendant William W. Corey, his partner, and to his wife, that they were losing money.

After the dissolution of the firm in February, 1893, the defendant William W. Corey continued the business in his own name until June 8, 1896, when he made a general assignment for the benefit of creditors to the defendant Frank L. Pelo. Among the assigned property was a stock of groceries and fixtures inventoried at $1,188, and sold by the assignee for $592.43. The accounts due him were inventoried at $4,041, upon which the assignee collected $800. So it appears that the defendant William W. Corey was indebted in several thousand dollars more than he had assets to pay. There is no controversy in the evidence given on the trial, as the defendants offered none. William W. Corey and his wife, Cynthia M. Corey, were examined July 1 and 2, 1896, in proceedings supplementary to execution. She testified that when she and her husband removed to Watertown, in March, 1892, she owned no property, and that no one owed her anything, and that in February, 1893, she and her husband removed to No. 1 William street, in Watertown, and that at that time she was the owner of no property. She testified that after moving to William street she began keeping boarders, and continued taking boarders until the date of the failure. Her boarders were few, and the prices paid small. The husband testified that during this time he was the owner of the farm on which the mortgage was given, which was let on shares, and that he furnished the house with potatoes, eggs, butter, maple sugar, and meat produced on the farm; that he supplied the house with groceries from his grocery store, of which no account was kept, and for which no payment was made. He also testified that his wife bought some meat in the summer time from butcher shops in the city; that his wife usually paid the bills; and that he also had bought meat at the butcher shops for the house, for which he paid. He testified that there was an "arrangement" between him and his wife that he was to supply the products from the farm and groceries from the store, he and his daughter to live in the family, and that she (the wife) was to have all the avails from keeping boarders. April 4, 1896, two months before the general assignment, the wife took a conveyance of the house and lot from Benjamin Hodge, for which she paid $930 in cash, and assumed the payment of a mortgage thereon for $370, making the purchase price of the property $1,300. The inference from the evidence of Mr. and Mrs. Corey seems to me to lead irresistibly to the conclusion that this so-called "arrangement" and the subsequent purchase of the property in her name were mere subterfuges to put the property of the husband beyond the reach of his creditors. Secret agreements of the character testified to by these defendants between husbands and wives, which result in transferring the property of the husband to the wife, should be regarded with great suspicion by courts. In the case at bar the wife, in 1893, as she testified, had no property, and at the end of three years she had not only this house and lot, but also a mortgage on the property of her husband as security for a pretended claim for $624. In addition to this, William W. Corey secured to his daughter the sum of $504 for her services rendered in the grocery store for three years, though during a part of the time she was engaged in domestic serv-

ices in the household. Corey testified that there was no agreement between him and his daughter as to her compensation; that she lived in the family, and was boarded and clothed out of the common stock. In three years' time the daughter was secured, out of the assets of the business, $504, the wife $930 in cash, invested in the house and lot, and $624 secured to her by the real-estate mortgage; making a total of $2,058. The fraudulent intent of the parties to these transactions is too apparent to be sustained. Neither the husband nor wife was sworn on the trial, and no attempt was made to show how much was made by keeping boarders. The husband testified on his supplemental examination that neither his wife nor daughter knew anything about the execution of this recorded mortgage until the time of the failure; that there was no figuring up between them, and that he gave it of his own volition without consulting either. Mary J. Adams, one of the plaintiffs, testified that in the autumn of 1894 she talked with Mrs. Corey, and that Mrs. Corey told her that what was made from boarders and from the grocery all went in together, and that it made no difference in whose name it was kept, and that it all was to be devoted to paying the creditors. At the same time Mrs. Adams had a conversation with Mr. Corey, and he stated that they were doing well in the grocery and in keeping boarders, and that all that was made was to be devoted to paying the debts, which evidence was not contradicted. In the supplemental examinations it was testified that the husband was in receipt of a pension of $6 a month, which would amount to $216 for the three years; and the wife testified that she received "some of it." How much does not appear. Had she received all of it, and invested it in the farm, it would have paid but a small part of the consideration.

A contract between a husband and wife, by which the latter is to be paid for her services rendered in the household, is void as against the creditors of the husband, and, if his estate is transferred to the wife in payment of such services and in performance of such a contract, the transfer is void as against the creditors of the husband, and the property so transferred or purchased with the avails of such a contract may be reached by his creditors. Coleman v. Burr, 93 N. Y. 17; Blaechinska v. Howard Mission, 130 N. Y. 497, 29 N. E. 755; Porter v. Dunn, 131 N. Y. 314, 30 N. E. 122; In re Callister, 153 N. Y. 294, 47 N. E. 268; Talcott v. Thomas (Sup.) 21 N. Y. Supp. 1064, less fully reported 50 N. Y. St. Rep. 621.

The finding of the trial court that this transaction between the husband and wife as to this farm is without evidence to sustain it, and the judgment in so far as it is appealed from should be reversed, with costs, in favor of the appellants and against the respondents, to abide the event. All concur.