SANITARY FIREPROOFING & CONTRACTING CO.    v. SCHEIDECKER
et al.    (No. 6450.)

(Supreme Court, Appellate Division, First Department.    December 31, 1914.)

1. FRAUDULENT CONVEYANCES (§ 271*)—EVIDENCE—PRESUMPTIONS AND BURDEN OF PROOF.

A voluntary conveyance by one indebted at the time is presumptively fraudulent as against existing creditors, and the burden is upon those claiming under the conveyance to show good faith and an absence of fraud.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 796–798, 821; Dec. Dig. § 271.*]

2. FRAUDULENT CONVEYANCES (§ 57*)—SOLVENCY OF GRANTOR—SUBSEQUENT INSOLVENCY.

Where, though at the time of an alleged fraudulent conveyance to a party, who reconveyed to the grantor's wife, the grantor was possessed of an equity in real estate of considerable value, and also had money in the bank, shortly thereafter he transferred such equity in exchange for a farm, title to which was taken in his wife's name, and used the money in the bank, thereby disposing of all of his property available for the payment of his debts, and placing his wife in possession of all of his tangible property, the conveyance in question was properly set aside.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 138–142, 148, 150–158; Dec. Dig. § 57.*]

McLaughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Sanitary Fireproofing & Contracting Company against Lena Scheidecker, individually and as executrix, and another. From a judgment entered upon a decision setting aside a conveyance upon the ground of fraud, defendant named appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

Emanuel S. Cahn, of New York City, for appellant.
Robert A. McDuffie, of New York City, for respondent.

CLARKE, J. The plaintiff obtained a judgment in the City Court against Charles Scheidecker on March 15, 1910, for the sum of $1,044.95, on a claim for fireproofing material furnished said defendant, which is alleged to have been past due and payable prior to the making and execution of the deed to the property in question. It appears that that debt accrued in 1904, and that suit was begun by summons dated and served on December 28, 1908. Judgment was duly docketed, transcript filed, and executions issued both in New York and Westchester counties and returned unsatisfied.

By deed dated November 14, 1908, acknowledged November 19, 1908, and recorded November 21, 1908, Charles Scheidecker and Lena Scheidecker, his wife, conveyed the property in question to Oscar Brenner for the expressed consideration of $100 and other good and valuable considerations. The court has found that the above conveyance was so made by Scheidecker and his wife and received by the said Oscar Brenner in anticipation of a possible judgment arising

from the claim of this plaintiff, which had prior to said conveyance accrued. Thereafter, by deed dated November 20th, the day after the first-mentioned deed had been acknowledged, Oscar Brenner, in consideration of $100 and other good and valuable considerations, conveyed said property to Lena Scheidecker. This deed was acknowledged on the same day, November 20, 1908, but was not recorded until April 6, 1909. The court has found:

"That there was absolutely no consideration whatever moving from said Brenner to said Charles Scheidecker and his wife, or to either of them, for the transfer and conveyance of said property," and "that the attempted transfer to Brenner was made without any consideration, and was made and accepted by Brenner with the intent to hinder, delay, cheat, and defraud creditors of said judgment debtor, Charles Scheidecker, and especially the plaintiff herein, of its accrued claim, all to the knowledge of the said defendant Oscar Brenner, and the said Charles Scheidecker was thereby, and because of other conveyances and transfers, made at about the same time, rendered insolvent, and had no other property subject to levy and sale on execution at the time or since the date of said conveyance, or since the rendition of the said judgment. That the said attempted transfer and conveyance of said real property from the defendant Oscar Brenner to the defendant Lena Scheidecker was made with the same fraudulent intent and purpose. That the said conveyance was so made by the said Oscar Brenner, and so received by the defendant Lena Scheidecker, in pursuance of the same common fraudulent scheme and design of the said Charles Scheidecker and the defendants aforesaid, with intent to hinder, delay, cheat, and defraud the creitors of the said judgment debtor, Charles Scheidecker, and particularly the plaintiff herein. That the said transfer and conveyance was fraudulent upon its face, for the reason that it was also made without any consideration whatever, after the claim of the plaintiff against the judgment debtor had accrued, and that the deed of gift was withheld from the record for nearly five months after its delivery."

[1] I think that these findings are supported by the evidence, and that the judgment is right, and should be affirmed.

It is now settled by Kerker v. Levy, 206 N. Y. 109, 99 N. E. 181, that the rule stated in Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082, is the law of the state, namely, that a voluntary conveyance by one indebted at the time is presumptively fraudulent as against existing creditors. The plaintiff made out a prima facie case. The burden was therefore upon the defendant to show good faith and an absence of fraud, and this she utterly failed to do. There was an attempt made to show that the original conveyance to Brenner was in anticipation of marriage, and was supported by that proposed marriage which was subsequently consummated; but the trouble is, first, that Charles Scheidecker's daughter emphatically denied that she had become engaged to Brenner upon the promise or consideration that the property would be conveyed to him, and he is not put upon the stand, so we have no statements whatever from him, and, second, that he immediately transferred the property back to his prospective mother-in-law, the defendant Lena Scheidecker. At the time of this transaction it is in evidence that the property was worth $10,000, or considered to be worth $10,000, and that it had no incumbrance whatever upon it. The mother and daughter attempt to show that Brenner held the property for either six or nine months, as they say, at different times, and then was forced to convey it back because he could not pay the

taxes, which amounted to $133. This explanation fell, because of the date of the acknowledgment of the deed, which was simultaneous, or practically so, with the acknowledgment of the deed by Charles Scheidecker to him. It is true that this deed was not recorded until April; that is, it was held off the record from the 20th of November until some time in April, which is only five months, instead of nine, at any rate. But as evidence of the time of execution the date of the recording cannot prevail over the date of the acknowledgment. In addition to that, it is hardly to be supposed that if this unincumbered property had been given to him as a wedding gift, he would give it back because of his inability to pay $133 in taxes, when, after Mrs. Scheidecker got it back, she was able to get a $4,000 mortgage on it, and it is conceded that the property was worth $7,500 at the time of this action.

[2] The defendants also claim that at the time of the transfer Charles Scheidecker was possessed of an equity in three houses which amounted to $40,000, but stripped himself of that property by transfer to a Mrs. Lee for property known as the farm at Hastings, title to which was taken in the name of his wife, and which was, therefore, unavailable for paying his debts. It was also claimed that he had some $3,000 in the bank; but it appears that this amount was made up of rents of this property in which he claimed to have the equity, that it was kept there and used for the purpose of paying incumbrances thereon, and that on the 3d of December, $2,950 was drawn out for the purpose of paying interest on the mortgages on the property. The result of all the transactions is that Scheidecker did not have a cent available for the payment of his debts and his wife was in possession of all his tangible property. It is not claimed that they were transferred to her for previous debts or liabilities owing by Scheidecker to her; but it is quite apparent that, in anticipation of this claim and another suit, which was pending at the time, for some $1,200, he undertook to make himself execution proof. We see no reason for disturbing the conclusion of the court below.

The judgment appealed from is affirmed, with costs.

INGRAHAM, P. J., and HOTCHKISS, J., concur.

McLAUGHLIN, J. (dissenting). If it is to be conceded that the conveyances by Scheidecker to Brenner and from Brenner to the defendant were made without consideration, that did not establish, under the facts proved, that they were made with intent to hinder, delay, and defraud the plaintiff. One has a perfect right to give his property away, if he sees fit to do so, provided he retains enough to pay or satisfy his debts.

Here the fact is uncontradicted that, after the conveyances were made, Charles Scheidecker had a credit balance of $2,468.77 in the Bank of Washington Heights. He also had an equity of upwards of $40,000 in property other than that conveyed. He had more than enough to satisfy all his debts. The conveyance in question, therefore, did not render him insolvent, and the fact that he became so several weeks thereafter by drawing the money from the bank, or by trans-

ferring his equity in the other property, did not affect the transfers here complained of. Such conveyances were not fraudulent. Wilks v. Greacen, 155 App. Div. 623, 140 N. Y. Supp. 851.

I am unable, therefore, for the reasons given, to concur in the opinion of Mr. Justice CLARKE, and vote to reverse the judgment and order a new trial.

DOWLING, J., concurs.