HENRY C. MARCY, as Trustee in Bankruptcy of HOMER J. FRENCH, Plaintiff, *v.* EVANGELINE A. FRENCH, THEODORE L. FRENCH, GOLDIE FRENCH, LEWIS D. FRENCH and CARRIE FRENCH, Defendants.

(Supreme Court, Monroe Equity Term, July, 1919.)

Contracts — secret agreements between husband and wife — fraudulent conveyances — evidence — bankruptcy.

> Secret agreements between husband and wife under which it is claimed that he carried on the business of erecting and selling houses for her while at the same time he conducted a like business for himself, will be viewed with suspicion and any transfers of real property to her will be set aside at the instance of creditors where it appears that she had not sufficient funds with which to begin such a business, that written evidence of the agreement and the transaction has been destroyed, that their moneys have been commingled and other facts appear showing an intent to conceal the assets of the husband and to defraud his creditors.

ACTION to set aside fraudulent transfers.

Carlton F. Bown, for plaintiff.

William MacFarlane, for defendant.

RODENBECK, J. The defendant Evangeline A. French, the wife of Homer A. French, claims to have begun the business of erecting and selling houses with the meager assets of $300 in cash and she winds up at the time of her husband's bankruptcy with valuable equities in real estate. The husband began the same business at the same time for himself with larger assets and ended in bankruptcy owing large sums to his creditors. The husband managed both business

operations, succeeding for his wife and failing for himself. There are no personal books of account, bank books, checks, vouchers or stubs except for the last two years of their operations to verify the respective results or the claim of individual ownership. A conclusion that the operations for the wife were successful and that those for the husband were unsuccessful can not be sustained. The result of the alleged operations is consistent only with the conclusion that the success of the wife and the failure of the husband was not a mere accident but a joint plan to defeat the husband's creditors. The case abounds with evidence that the design of the husband and wife has been to protect themselves in case of adverse results in the husband's business. From the beginning, it is claimed, they kept separate books of account but none are produced except those for 1917 and 1918, and it is claimed that the other books were destroyed as useless, together with the bank books, checks, vouchers and stub books by which their claim might be sustained. It is taxing credulity to ask the court to believe that there was not some other purpose in so doing. The moneys of the husband and wife were intermingled except for a period of three years when the wife had no bank account at all and the only explanation vouchsafed is that she was sick and was advised not to attend to business. The transactions were handled by him as though the property were his own. He paid for lots in whole or in part, to which she took the title, with his own checks. He paid mortgages and interest on mortgages that belonged to her. He assigned his mortgages in part payment of property deeded to her. He paid for releases of mortgages on her property. He exchanged his lots for lots deeded to her. He received money from the sale of her mortgages. All of this was going on while the obligations

of the building operations were being charged to him and while there were obligations owing by him and when bankruptcy came it is not surprising that his wife and brother had the property and he had the debts. The courts will not put an innocent construction upon such dealings since it is the experience of men that such methods of doing business are not indulged in except by those who have some ulterior motive in view beside the honest conduct of business and the payment of just debts. A man may make a reasonable provision for his wife but he cannot do so with dishonest motives, at the expense of his creditors. He must deal honestly and openly and if he involves, mingles and merges his business transactions with those of others with the result arising in this case, the courts will assume that it was done to accomplish some ulterior purpose. Secret agreements between husband and wife, under which it is claimed that the former carried on the business of erecting and selling houses for her while at the same time he conducted the same business for himself, will be viewed with suspicion by a court of equity and any transfers of real property to her will be set aside at the instance of creditors where it appears that the wife had no sufficient means with which to begin such a business, that written evidence of the agreement and the transactions has been destroyed, that their moneys have been commingled and other facts appear showing an intent to conceal the assets of the husband and to defraud his creditors. *Citizens Nat. Bank* v. *Fonda,* 18 Misc. Rep. 114; *Conger* v. *Corey,* 39 App. Div. 241, 243; *Carpenter* v. *Roe,* 10 N. Y. 227; *Teed* v. *Valentine,* 65 id. 471; *Case* v. *Phelps,* 39 id. 164; *Kerker* v. *Levy,* 206 id. 109; *Smith* v. *Reid,* 134 id. 568; *Sanitary Fireproofing & Contg. Co.* v. *Scheidecker,* 165 App. Div. 294; *Durland* v. *Craw-*

*ford,* 183 id. 763; *Whyte* v. *Denike,* 53 id. 320; *O'Brien* v. *Whigam,* 9 id. 113; *De Hierapolis* v. *Reilly,* 44 id. 22; affd., 168 N. Y. 585.

The property held by the wife should all be set aside and that in the name of the brother in Williamson being also involved in the general plan should be given over to the trustee for the benefit of the creditors with a provision protecting the brother in such investments as he may have made in the property.

Ordered accordingly.