WILTON BLOCK, as Administrator with the Will Annexed of C. HENRY AMSDEN, Plaintiff, *v.* CATHARINE M. AMSDEN, Impleaded with Others, Defendants.

(Supreme Court, Monroe Special Term, July, 1919.)

Fraud — deposits in name of wife — banks — liens — husband and wife — executors and administrators — Pers. Prop. Law, § 19.

> Under section 19 of the Personal Property Law an administrator may bring an action to set aside as in fraud of the rights of creditors of his intestate deposits made by said intestate in banks in the name of his wife.
>
> Where in such an action the wife claims to have made loans to her husband in connection with his business of discounting notes, which loans it is claimed were repaid by small deposits which he made in her name daily in one or more of a number of banks, but it appears that while said deposits were being made the husband, who died insolvent, was in debt, and other facts appear showing an intent on the part of both husband and wife to defraud his creditors, the plaintiff is entitled to judgment.
>
> A bank has a lien upon deposits to the extent of all its matured claims against the depositor and may offset such debt against such deposits.

ACTION to set aside deposits in banks in fraud of creditors.

Benton, Lewis, McKay & Bown (Clarence W. McKay and George A. Benton, of counsel), for plaintiff.

Herbert J. Stull, for defendant Catharine M. Amsden.

Robbins, McLean & Duffy, for defendant Fidelity Trust Company, of Rochester, N. Y.

William B. Lee, for defendant Monroe County Savings Bank, of Rochester, N. Y.

Harris, Beach, Harris & Matson, for defendant Security Trust Company, of Rochester, N. Y.

Carnahan, Adams, Jameson & Pierce, for defendant Union Trust Company, of Rochester, N. Y.

Harris, Beach, Harris & Matson, for defendant Rochester Savings Bank.

Hubbell, Taylor, Goodwin & Moser, for defendant Alliance Bank, of Rochester, N. Y.

John P. Bowman, for defendant Central Bank, of Rochester, N. Y.

Hale & Bronk, for defendant Mechanics Savings Bank, of Rochester, N. Y.

Havens, Mann, Strang & Whipple, for defendant Rochester Trust and Safe Deposit Company.

Francis S. Macomber, for defendant Merchants' Bank, of Rochester, N. Y.

Warren, Shuster & Case (Clarence E. Shuster, of counsel), for National Bank of Commerce, of Rochester, N. Y.

RODENBECK, J. This is an action to set aside deposits in the defendant banks claimed to have been made by C. Henry Amsden in the name of his wife, Catharine M. Amsden, in fraud of the rights of creditors. The action is brought by the administrator of C. Henry Amsden under section 19 of the Personal Property

Law, for the benefit of his creditors. This is one of several actions recognized by law to set aside fraudulent transfers. In addition to this form of action there is the well-known common law action which existed prior to the enactment in this state of any statute on the subject. *Chautauqua County Bank* v. *White,* 6 N. Y. 239; *Smith* v. *Reid,* 134 id. 568; *Carpenter* v. *Roe,* 10 id. 227; *Case* v. *Phelps,* 39 id. 164. By the Code of Civil Procedure there was given the right to a judgment creditor to set aside a fraudulent transfer where he has been unable to collect his judgment. Code Civ. Pro. § 1871; *Kerker* v. *Levy,* 206 N. Y. 109; *O'Brien* v. *Whigam,* 9 App. Div. 113; *Carr* v. *Breese,* 81 N. Y. 584; *Babcock* v. *Eckler,* 24 id. 623; *Conger* v. *Corey,* 39 App. Div. 241. By other statutes there was granted an executor's or administrator's action for the benefit of creditors to set aside the transfer of personal property made in fraud of creditors (Pers. Prop. Law, § 19); the creditor's action to set aside fraudulent transfers of personal property by insolvent decedents (Pers. Prop. Law, § 19; *Rosselle* v. *Klein,* 42 App. Div. 316; *Calkins* v. *Stedman,* 146 id. 202; *Harvey* v. *McDonnell,* 113 N. Y. 526; *Bate* v. *Graham,* 11 id. 237); the executor's or administrator's action for the benefit of creditors to set aside the transfer of real property made in fraud of creditors (Real Prop. Law, § 268), and finally the creditor's action to set aside fraudulent transfers of real property by insolvent decedents. Real Prop. Law, § 268. Each of these actions has peculiar features not common to the others but the main issue that arises in them relating to fraud is governed by principles applicable to all of them including the present action which is one by an administrator for the benefit of creditors. In such an action the administrator represents the creditors and the action is to be treated so far

as the admissibility of evidence is concerned, the same as if the creditors were the plaintiffs (*Miller* v. *David,* 60 Hun, 198), and the declarations of the intestate are to be considered as to their admissibility the same as if the action were brought by the creditors. These declarations are admissible in favor of the creditors (Wigm. Ev. § 1086), but inadmissible on behalf of the alleged fraudulent transferee being regarded as to him as in the declarant's favor. 16 Cyc. 996(d). The statements of Mr. Amsden therefore tending to sustain the deposits as belonging to his wife were declarations in his interest and were not admissible and those tending to show that the moneys were his and were deposited in his wife's name for the purpose of defrauding his creditors were against his interest and were properly admitted.

The cause of action set out in the complaint is a single one and is based upon the claim that C. Henry Amsden died insolvent and during the time mentioned in the complaint from January 1, 1906, down to the time of his death, October 10, 1915, while he was conducting the hazardous business of discounting notes and loaning his credit, and while he was indebted, he made deposits in certain banks in the city of Rochester in the name of his wife for the purpose of defrauding his existing creditors and those who subsequently might become his creditors. The theory upon which the complaint proceeds is that C. Henry Amsden attempted to deposit the moneys in question as gifts to his wife in contemplation of his death, or for the purpose of concealing his assets, and that such action was fraudulent and void as against his creditors as the deposits were made with the intent to hinder, delay and defraud his creditors. The only allegations on this issue that were necessary in the complaint were that the deposits were made in the name of his wife

with the intention and for the purpose of defrauding his creditors. The allegations with reference to an intended gift by him to his wife are mere surplusage and add nothing to the cause of action. The gist of the action is that the moneys which were deposited in the various banks were deposited by him for the purpose of defrauding his creditors under circumstances which indicate such an intent. The statute under which the action has been brought authorizes such an action by an administrator " for the benefit of creditors " when transfers of personal property have been made in " fraud " of the rights of creditors. Pers. Prop. Law, § 19. The main question involved, therefore, is whether or not C. Henry Amsden caused deposits of his money to be made in the defendant banks in the name of his wife for the purpose of defrauding his existing or future creditors.

The alleged transfers were made by a husband to his wife which are not necessarily fraudulent but which may be fraudulent according to the circumstances. A husband may make a suitable provision for his wife if made without any fraudulent intent under circumstances which permit such a transfer to be made (*Carr v. Breese,* 81 N. Y. 584), but he can not take care of himself and of his family at the expense of his creditors under circumstances which amount to a fraud upon their rights. " The law will approve of the generosity of the husband but will insist that he must be just before he can be generous." *Citizens National Bank* v. *Fonda,* 18 Misc. Rep. 114, 118. Secret agreements between a husband and wife which operate to deprive a creditor of his rights are regarded with suspicion (*Conger* v. *Corey,* 39 App. Div. 241, 243), and a contract between a husband and wife by which the latter is to be paid for her services rendered in the household is void as against the creditors of the hus-

band and if the estate is transferred to the wife in payment of such services and in performance of such a contract, the transfer is void as against his creditors and the property so transferred or purchased with the avails of such a contract may be reached by his creditors. Id. 244. Where the husband makes a voluntary conveyance to his wife it is presumptively fraudulent as against existing creditors. *Kerker* v. *Levy,* 206 N. Y. 109; *Smith* v. *Reid,* 134 id. 568; *Sanitary Fireproofing & C. Co.* v. *Scheidecker,* 165 App. Div. 294. Where the transfer is voluntary but the creditors are subsequent in point of time, the transfer is fraudulent if it serves to defeat their claims and was made by the transferror with the intent to defraud them although the transferee may not have participated therein (*Case* v. *Phelps,* 39 N. Y. 164; *Durland* v. *Crawford,* 183 App. Div. 763; *Whyte* v. *Denike,* 53 id. 320) even where the liability is a contingent one. *O'Brien* v. *Whigam,* 9 App. Div. 113. Where, however, there was a valuable consideration for the transfer between husband and wife a fraudulent intent on the part of both the transferror and transferee must be shown. *Kerker* v. *Levy, supra; De Hierapolis* v. *Reilly,* 44 App. Div. 22; affd., 168 N. Y. 585.

The defendant Catharine M. Amsden and C. Henry Amsden were married in 1892. At that time she had a small account in the Monroe County Savings Bank of the city of Rochester, amounting to $620 including the deposits made in 1892. In 1895 three years after her marriage she opened another account in the Monroe County Savings Bank. In 1901 five new accounts were opened in banks of the city. In 1905 two additional accounts were opened in banks of the city, making at that time nine accounts in her name. This is the period which is not involved in the issues in this

action.   Thereafter and in the following year, 1906, six additional accounts were opened, two more in 1907 and the last one in 1910, at which time there were eighteen accounts in banks of the city in the name of Mrs. Amsden in one form or another while her husband had not a single account in his own name.   She began deposits in the banks of the city when she had very small means and at the time of his death, October 10, 1915, these deposits with the accumulated interest aggregated $43,767.49.   Her husband was a man of large means engaged in the banking and note-shaving business with resources of $100,000 or more and at his death he was insolvent owing his creditors upwards of $40,000.   He was conducting all of her financial affairs as well as his own and it is for the defendant Catharine M. Amsden to explain how her resources increased so largely that at the time of her husband's death she had the nominal title to all moneys in the banks of the city and to mortgages and real estate of which he was once the owner while his resources had dwindled and disappeared until he was indebted to his creditors in the sum mentioned.

When this broad fact is considered in connection with the sidelights cast upon it by separate circumstances the conclusion of an attempt to defraud his creditors is irresistible.   It is claimed that the wife loaned moneys to the husband to use in his business of discounting notes and that with certain exceptions the moneys were repaid by the deposits made in the various banks in the name of the wife.   This agreement is not in writing and there is no documentary evidence of it except certain notes and accompanying papers purporting to represent loans made.   The conveyances of land and transfers of the mortgages by him to her are not claimed to have been paid for by checks drawn by her on any of the bank accounts but as a repayment to

her of prior loans which cannot be traced by any checks drawn on any bank account. The deposits aside from having been made in so many banks were made in small amounts ranging from a dollar or two upwards almost daily and sometimes in small amounts daily in more than one bank and occasionally more than one small amount would be deposited in the same bank on the same day. The deposit slips excepting those relating to the wife's personal accounts are nearly all in his handwriting. It is claimed that the moneys were given to him by his wife when he left home and yet in some instances more than one small deposit was made in the same bank account during the same day. There is also quite a striking correspondence between the probable income received by him from discounts and the amount of the yearly deposits in the banks. All this was going on while Mrs. Amsden was not engaged in any separate business and all of her income other than that received from her sister, Mrs. Krug, and the small amount which she had at the time of her marriage, was received through her husband. At the same time to all outward appearances he was doing business as usual but below the surface he was depositing moneys in her name and postponing the payment of his obligations until he became insolvent. There is not sufficient evidence to sustain the claim that all of the moneys were deposited to reimburse the wife for loans which she had made or was making. There are certain deposits which were made with the intention of protecting his wife and himself as against his creditors and for the purpose of defrauding his creditors. Such deposits of his money voluntarily made are void not only as against existing creditors but as against subsequent creditors although the wife may not have participated therein. It appears however that she knew of these bank accounts, was aware of the use of the money, had possession of the

bank books, signed the checks by which money was withdrawn and must be held to have participated in the fraudulent effort of her husband to deprive existing or subsequent creditors of the moneys so deposited and thus to defraud them of their rights. The case therefore is one where the husband and wife both participated, in the fraudulent purpose and the deposits made with this intent are void as against not only existing but subsequent creditors. *Calkins* v. *Stedman,* 146 App. Div. 202; *DeHierapolis* v. *Reilly, supra; Conger* v. *Corey, supra; Durland* v. *Crawford, supra; Whyte* v. *Denike, supra; O'Brien* v. *Whigam, supra; Citizens National Bank* v. *Fonda, supra.*

The period from 1889 to January 1, 1906, is not involved in this action and Mrs. Amsden is entitled to the deposits that were made during that period. Her husband had the right during that period so far as this action is concerned to transfer his property and give his money to his wife and she is entitled to the balance in the bank on January 1, 1906. This balance was $9,143.16. She is also entitled to the accumulated interest on this amount from January 1, 1906, to October 10, 1915, which has been apportioned at the sum of $4,369.07. She acquired the premises at No. 297 Averill avenue on May 26, 1905, and is entitled to the income therefrom from January 1, 1906, to October 10, 1915, at $25 a month amounting to $2,932.50 and to the income from the Union street property acquired July 9, 1890, for the same period at $5 a week, amounting to $2,526.42. She loaned her husband $1,000 in March, 1905, for which he gave her his promissory note and she is entitled to this sum with interest down to the time it was paid amounting to $1,200, with accumulated interest to October 10, 1915, amounting to $1,568.98. She is also entitled to the moneys that were given to her by her sister for board and room. These

moneys were deposited in her three personal bank accounts and no other moneys having been deposited in these accounts, she is entitled to the balance in these accounts on October 10, 1915, with the accumulated interest from January 1, 1906, to October 10, 1915, amounting to $4,521.79. The total of these allowances is the sum of $25,061.92 upon which she is entitled to accumulated interest from October 10, 1915.

Certain claims for the principal of and income from properties transferred to her by her husband or for alleged loans must be disallowed. These were all transactions that occurred after January 1, 1906, during the period when she and her husband were engaged in manipulating their finances so as to defraud his creditors. There is no sufficient evidence to warrant the court in finding that certain transfers and loans made subsequent to January 1, 1906, were *bona fide* transactions so as to allow Mrs. Amsden the principal and income therefrom out of the deposits which were made between January 1, 1906, and October 10, 1915. These disallowances include the Durgin street property conveyed to her August 9, 1909; the Etts, McPadden and Holenstein mortgages transferred to her November 23, 1906; the Burns mortgage transferred to her April 7, 1909; the Wilkinson mortgage transferred October 29, 1907, and the alleged loan of $2,500 claimed to have been made to her husband April 18, 1907. No allowance is made to her under the agreement claimed to have existed between her and her husband to pay her fifty dollars a week while they were at the Livingston Hotel or twenty-five dollars a week for the use of the Averill avenue house after its transfer to her, as such agreements were secret arrangements and are not substantiated by other evidence than the word of Mrs. Amsden. *Conger* v. *Corey, supra.* There was withdrawn during the period from January 1, 1906, to

October 10, 1915, from the total deposits, no money being withdrawn from the three accounts belonging to Mrs. Amsden, the sum of $10,387.45. These withdrawals should not be charged to her as it does not appear that the withdrawals were for her use or benefit but represent moneys that were redeposited or were used by her husband.

The net balance of the moneys in the banks deposited between January 1, 1906, and October 10, 1915, after deducting the allowance made to Mrs. Amsden and the balance in the Traders National Bank, belongs to her husband's creditors. This balance amounts to the sum of $12,745.72. There should be deducted from this amount however the allowance to the National Bank of Commerce amounting to the sum of $1,320.01 on October 10, 1915. The latter bank had deposits in the name of Mrs. Amsden sufficient to cover its claim when it became due and had a lien upon the deposits for its claim which it may offset against such deposits. *Meyers* v. *New York Co. Nat. Bank,* 36 App. Div. 482; *People* v. *St. Nicholas Bank,* 44 id. 313; *Jordan* v. *National Shoe & Leather Bank,* 74 N. Y. 467; *Crosby* v. *Bank of Niagara,* 154 N. Y. Supp. 883. This leaves for distribution among the creditors through the plaintiff in this action, the sum of $11,425.71, with accumulated interest thereon from October 10, 1915.

Judgment accordingly.